MORENCY et al. v. FLOYD et al.

(Third Division. Fairbanks. May 7, 1904.)

No. 133.

ESTOPPEL—FAILURE TO ASSERT TITLE.

Floyd made a contract in writing of sale of a half interest in a mining claim to Cascaden. It was not acknowledged, witnessed, or recorded. Cascaden sold to Gage by deed, which Floyd witnessed, and thereafter by his affidavit made proof of its authenticity, whereby it was entitled to and was recorded. *Held*, that Floyd was estopped to deny Gage's title.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Estoppel, §§ 183, 184.]

An application to restrain work on placer mining claim No. 6 above discovery on Fairbanks creek, and to appoint a receiver, with instructions to take charge of the clean-up of the dumps now on the surface, and to hold the proceeds pending litigation.

B. A. Dodge and Claypool & Cowles, for plaintiffs.

E. B. Condon and L. C. Hess, for defendants Floyd, Condon, and Welch.

H. J. Miller, for defendant McConnell.

WICKERSHAM, District Judge. The plaintiffs claim to be the owners of an undivided two-thirds interest in placer mining claim No. 6 above discovery on Fairbanks creek in the Fairbanks mining district, and set out their chain of title at length in their complaint. The defendants deny the plaintiffs' title, except they admit that plaintiff Himes is rightfully the owner of an undivided one-sixth interest in the mine, and assert their own title to the property. The matter now before the court is an application for an injunction to prevent waste, and for the appointment of a receiver to take charge of the clean-up and dumps taken out during the winter. The matter of title lies at the very door of the case, and, as the court shall find that fact, it must rule on the application for an injunction and a receiver.

The first question for determination is the effect of that written instrument made by Floyd and Cascaden on November 29, 1902. It is suggested in the argument of counsel that no proof has been offered that this was the deed of Floyd, although no objection was made to the introduction of the instrument in evidence upon that or any other ground. It is shown by the affidavit of E. B. Condon, filed as evidence herein by the defendants, that he was the attorney for Floyd during the summer of 1903, and as early as May 24th, and was made his attorney in fact by written instrument of September 21st,

and that ever since he has been his attorney in fact as well as in law. On May 4, 1904, a notice in writing was served on attorneys for defendants, requiring them to produce upon the hearing of this application "a certain instrument in writing, dated on or about the 29th day of November, 1902, executed by the defendant John E. Floyd to one David H. Cascaden, and conveying, or purporting to convey, among other property, a one-half interest in No. 6 above discovery on Fairbanks creek in said district," and notifying them that, upon their failure to produce it, secondary evidence of its contents would be offered. In pursuance to that notice and upon the hearing of this application, E. B. Condon produced the document demanded, and it was offered and admitted in evidence in the case without any objection thereto, and the court will now presume that it is what it appears to be upon its face. The instrument, however, is without witnesses, and does not appear to have been acknowledged or recorded. After stating the date, and mentioning Floyd as the party of the first part and Cascaden as the party of the second part, it reads:

"That said party of the first part, for and in consideration of the sum of one thousand dollars ($1,000) in hand paid to him, this, the above-named date, by said party of the second part, the receipt of which is hereby acknowledged, hath bargained, sold, and forever quitclaimed one-half of his interest in the following described claims [among others] claim No. 6 above dis. on Fairbanks creek."

The instrument contains some other agreements following the conveyance clause, but they do not in any respect change or modify it, and it is signed by both Floyd and Cascaden.

The Civil Code of Alaska provides:

"Sec. 73. A conveyance of lands, or of any estate or interest therein, may be made by deed, signed and sealed by the person from whom the estate or interest is intended to pass, being of lawful age, or by his lawful agent or attorney, and acknowledged or proved, and recorded as directed in this chapter, without any other act or ceremony whatever."

"Sec. 76. The term 'heirs', or other words of inheritance, shall not be necessary to create or convey an estate in fee simple; and any

conveyance of any real estate hereafter executed shall pass all the real estate of the grantor, unless the intent to pass a less estate shall appear by express terms, or be necessarily implied in the terms of the grant."

"Sec. 82. Deeds executed within the district, of lands or any interest in lands therein, shall be executed in the presence of two witnesses, who shall subscribe their names to the same as such; and the persons executing such deeds may acknowledge the execution thereof before any judge, clerk of the district court, notary public, or commissioner within the district, and the officer taking such acknowledgment shall endorse thereon a certificate of the acknowledgment thereof and the true date of making the same under his hand."

An instrument in writing, signed by the parties, may serve as one step in the conveyance of real estate, although it is neither witnessed, acknowledged, or recorded. Such an instrument, containing, as that in question does, apt words to convey, when made, signed, and delivered to the grantee, and followed by acts constituting estoppel, becomes sufficient, as between grantor and grantee, to convey the legal title. Witnesses, acknowledgment, and record add nothing to the agreement between the parties; they are formalities required by the law, and become prima facie evidence only of the final conclusion of the contract. If added to this deed, no question would be raised about its sufficiency in law. The instrument of date November 29th is, therefore, a valid contract between the parties; it lacks only the formalities of witnesses, acknowledgment, and record, required by law. Its making and signing by the grantor and its delivery to the grantee are not disputed. It is produced by the grantors' attorney at law and in fact, upon a notice requiring him to produce an instrument signed by Floyd, and conveying, or purporting to convey, a half interest in the land in dispute to Cascaden. It is a simple contract of conveyance between the grantor and grantee, but it lacks the statutory formalities. The consideration is admitted, and every element in support of a quitclaim title in Cascaden is present.

With this conveyance in his favor, and on February 11, 1903, Cascaden made, signed, and delivered a deed of all his undivided one-half interest in the property in dispute to F. H. Gage. This deed was also lacking in one of the statutory formalities—it was not acknowledged. Among its three witnesses, however, was Floyd, and on the 6th day of March, 1903, he signed an affidavit written on the back of the deed from Cascaden to Gage, stating his own place of residence, that he knew the person described in and who executed such conveyance as grantor, and that the grantor signed the deed in his presence. Upon this proof the deed became entitled to be, and was, recorded on March 11, 1903. Section 89, Civil Code of Alaska. Having in good faith, by his contract of November 29, 1903, sold an undivided one-half interest in the claim to Cascaden; having acknowledged the receipt of the consideration mentioned therein; having on·February 11, 1903,·been present when Cascaden sold the same property to Gage; having acted as a witness upon the deed to Gage; and having thereafter, and on March 6, 1903, secured its proof and made it valid by his oath in accordance with the law—Floyd is now estopped to deny the title then obtained by Gage. 7 Am. & Eng. Ency. of Law, p. 18, and notes.

In addition to his former acts and deeds, and on February 17, 1903, Floyd made a deed of an undivided one-sixth interest in the claim in question to F. H. Gage and the defendant Himes; the consideration being the agreement of the grantees to do the assessment work on the claim for the year 1903. It appears that this work was done and the consideration paid. This deed bears the names of two witnesses. It was acknowledged on the same date and before the same officer before whom Floyd made his affidavit of proof of the Cascaden deed, and both deeds were filed for record at the same minute, and recorded on the same page in the official records. Gage and Himes then had a good and valid title of record as against

Floyd of a two-thirds undivided interest in the mining claim in question, and Cascaden had no right, title, or interest left in the premises. Cascaden's quitclaim deed dated May 24, 1903, purporting to reconvey an undivided one-half interest to Floyd, was a barren effort, for he then had nothing to convey.

On June 27, 1903, Gage conveyed his undivided one-third interest in the claim in question to the plaintiffs Morency and Coulombe, leaving one-third in his partner, Himes. There is no objection urged to the formal parts of this or any subsequent deed; the contention of the defendants being that the first conveyance from Floyd to Cascaden was informal and void, and that Cascaden's deed to Gage was also void, and defendant's subsequent deed from Floyd was therefore valid.

Thereafter, and on July 20, 1903, Floyd made a lease of the lower one-half of No. 6 to M. E. S. Condon and Mark Welch. At this time the deed from Cascaden, proven by the oath of Floyd, and the deed from Floyd to Gage and Himes, together conveying a two-thirds undivided interest to the grantees, were of record. Condon and Welch took their lease subject to the rights of Gage and Himes and their grantees, Morency and Coulombe. Their lease, however, was good as to the undivided one-third interest of Floyd in the lower half of the claim, and will be sustained by the court to that extent. On September 26, 1903, Floyd conveyed by deed the remaining undivided one-third interest in the claim to the defendant McConnell, who acquired the same subject to the lease of Condon and Welch on Floyd's undivided one-third interest in the lower half of the claim. Upon the facts in this case, the court finds that the plaintiffs are the owners of an undivided two-thirds of the whole placer mining claim No. 6 above discovery on Fairbanks creek, that Condon and Welch have a lease on an undivided one-third interest in the lower half thereof, and that McConnell is the owner of an undivided one-third of

said claim, burdened with the Condon and Welch lease on an undivided one-third of the lower half thereof.

The plaintiffs and McConnell are the owners, as far as the case is now disclosed to the court, of the whole of said claim; the McConnell undivided one-third being burdened only with the Condon and Welch lease upon the undivided one-third of the lower half of the claim. The court is unable to discover from the record what interest the defendant Rice has, or claims to have, in the premises. Under these facts, the court will decline to grant an injunction or appoint a receiver, unless it shall be further made to appear necessary, on account of the failure of the co-tenants to work the mine, so as to protect the interests of each. 2 Lindley on Mines, § 790.