EDWARD A. SHEDD *et al.*

*v.*

· JOACHIM SEEFELD *et al.*

*Opinion filed October 23, 1907—Rehearing denied Dec. 4, 1907.*

1. RECEIVERS—*power of equity to adjust claim growing out of tort.* A court of equity having control of property through a receiver appointed by it in a proper case may entertain an intervening petition presenting a claim for damages growing out of an alleged tort of the receiver with respect to the property, and in the absence of any objection by either party to the jurisdiction of the court, or any demand for a trial by jury, may adjudicate the claim and enter a decree for damages and make it a lien on the property. (*Brown* v. *Wabash Railroad Co.* 96 Ill. 297, distinguished.)

2. APPEALS AND ERRORS—*a decree supported by competent evidence will not be reversed for incompetent evidence.* A decree in a chancery case heard by the chancellor without a jury will not be reversed because of errors in the admission of evidence, if there is sufficient competent evidence in the record to sustain the decree.

3. SAME—*decree will not be reversed on the facts unless clearly wrong.* Although the finding of the trial court, approved by the Appellate Court, is not binding upon the Supreme Court in a chancery proceeding, yet the decree will not be reversed because it is alleged to be excessive or not supported by the evidence unless the decree is clearly against the evidence.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

On May 22, 1899, and prior thereto, John Druecker was conducting a warehouse business on certain premises situated in the city of Chicago. On the above date he executed a conveyance in fee of said premises to E. A. Shedd, of Chicago, and Benjamin F. Harris, Jr., of Champaign, Illinois, for an expressed consideration of $70,000. Afterwards John Druecker filed his bill in chancery to have said deed declared a mortgage, and on May 23, 1901, F. A.

Smith and others, creditors of Druecker, filed a bill for the same purpose, theirs being in the nature of a creditors' bill. The two cases were afterwards consolidated. The property has been described in these proceedings and in said deed as wharfing lots 3 and 4 in block J, opposite lots 4 and 5 in block 8, in the original town of Chicago, also forty feet south of and adjoining said lot 4 in block J.

On June 11, 1901, E. J. Piggott was appointed receiver for said property known as the Druecker Warehouse. On November 21, 1902, Piggott resigned and Rawson Waller was appointed receiver in his stead. Waller conducted said warehouse business until March 21, 1903, when, pursuant to decree and order of court, the said property was turned over to Shedd and Harris. The order of the court entered March 21, 1903, provided as follows: "It is further ordered that the receiver file his account within thirty days, and shall on March 23, 1903, turn over the possession of said premises, and the business thereon, to said Shedd and Harris on reasonable request, the same to be subject to the receiver's certificate and all indebtedness, liquidated and unliquidated, incurred by him or them, and said property shall be held by said E. A. Shedd and B. F. Harris, Jr., subject to all existing liens against said receiver and ex-receiver and subject to claims and liens to be hereafter adjudicated, which shall be paid by said Shedd and Harris when and as established by this court, and said receiver shall make full report to the court, and the court reserves all matters relating to the receivership and administration thereof for further consideration and disposition."

On March 21, 1903, Joachim Seefeld and Charles F. Seefeld, appellees herein, by leave of the court, filed an intervening petition in said cause, naming E. J. Piggott, receiver, Rawson Waller, receiver, E. A. Shedd, (one of the appellants herein) and B. F. Harris, Jr., as defendants.

On December 29, 1903, Albert M. Johnson (the other appellant herein) filed his petition in said cause, alleging

that he had succeeded to all the rights and interest of said B. F. Harris, Jr., in the property in question by virtue of a certain quit-claim deed to the same from said Harris and wife, and prayed for leave to intervene in this suit and to answer the petition of J. Seefeld and C. F. Seefeld, instanter.

The intervening petition of the Seefelds alleged that on September 20, 1902, they entered into a contract with E. J. Piggott, receiver, to store 4000 barrels of apples in cold storage, at a specified rate; that pursuant to such contract they shipped twenty-one car-loads, or 3693 barrels, of apples to said receiver for storage; that said receiver received notice of the arrival of each of said cars in Chicago; that it then became the duty of the receiver to place said apples in cold storage within twenty-four hours of receipt of such notice; that it was also his duty to keep said apples at a temperature of thirty to thirty-three degrees (Fahrenheit) above zero; that said receiver disregarded his duty in these matters; that he allowed said apples to remain in the railroad yards more than twenty-four hours before placing them in cold storage, thereby allowing said apples to go into what is called a second sweat, which blisters them, so that their market value is reduced and they become what is known as second grade peddler's stock; that the receiver failed to keep the temperature between thirty and thirty-three degrees, Fahrenheit; that the said receiver carelessly and negligently conducted said warehouse by allowing water to accumulate and stand on the floors and by allowing the building to become damp and foul, so that the barrels of apples were covered with mud and dirt; that by reason of being allowed to stand on the railroad tracks until they were blistered and burned by going into said second sweat before being placed in cold storage, and by reason of the temperature not being kept between thirty and thirty-three degrees, said apples became badly rotted, and it was necessary to re-sort and re-pack each of said barrels before they could be sold; that the apples were from the best orchards, care-

fully selected and packed; that the natural shrinkage in apples is ten per cent, but the shrinkage in these apples was twenty-five per cent.

An accounting and general relief are prayed for in the petition. Answers and replications were filed and the issues were tried upon the oral testimony of witnesses heard in open court, together with documentary evidence submitted, and the deposition of one witness who was too sick to appear in open court. On February 18, 1905, the court rendered a decree in favor of the appellees for the sum of $3888.34, and made the same a lien upon the warehouse property described in the pleadings. The case was taken to the Appellate Court for the First District under a writ of error, and that court affirmed the decree of the court below. The case now comes here on appeal from the Appellate Court.

OLIVER & MECARTNEY, for appellants:

Equity has no jurisdiction of a tort sounding in damages. *Palys* v. *Jewett,* 32 N. J. Eq. 302; *Brown* v. *Railway Co.* 96 Ill. 297.

A judgment at law would not run against the receivers personally, but against the fund. *McNulta* v. *Lockridge,* 137 Ill. 270; *Bartlett* v. *Light Co.* 177 id. 68.

Trial by jury at law differs from trial by jury in chancery, the verdict in the former being controlling and in the latter only advisory. *Guild* v. *Hull,* 127 Ill. 523; *Biggerstaff* v. *Biggerstaff,* 180 id. 407.

Jurisdiction being the authority to hear and decide a case, (*People* v. *Talmadge,* 194 Ill. 67,) and a court of chancery having no authority to award damages, (2 Daniell's Ch. Pr. 1080,) the lower court had no jurisdiction.

It is not discretionary with a chancery court to compel a party claiming rights against its receiver to proceed against him by petition in the receivership action. Beach on Receivers, sec. 659; *McNulta* v. *Lockridge,* 137 Ill. 270; *Richards*

v. *Railway Co.* 124 id. 516; *Brown* v. *Railway Co.* 96 id. 297; *Freeman* v. *Winchester,* 10 S. & M. 577; Gluck & Becker on Receivers, (2d ed.) sec. 59.

Every bill or petition in equity must state a case within the appropriate jurisdiction of a court of equity. Story's Eq. Pl. sec. 10; 1 Daniell's Ch. Pr. (4th Am. ed.) 555; 1 Pomeroy's Eq. Jur. sec. 178; *Cook County* v. *Davis,* 143 Ill. 151.

The case at bar is one which under no circumstances is cognizable in a court of equity. *Richards* v. *Railway Co.* 124 Ill. 516; *McClay* v. *Norris,* 4 Gilm. 370; *McMannomy* v. *Walker,* 63 Ill. App. 259.

The distinction between law and equity is rigorously maintained in this State. *Ide* v. *Sayer,* 129 Ill. 230; *Friedman* v. *Podolski,* 185 id. 587; *George* v. *People,* 167 id. 447.

Consent does not give jurisdiction. *Harris* v. *People,* 128 Ill. 585; Cooley's Const. Law, 398.

Want of jurisdiction of the subject matter is available at any stage of the proceedings. 16 Cyc. 127; *Elevator Co.* v. *People,* 174 Ill. 203.

The objection may be raised for the first time on appeal. *Fisher* v. *Chicago,* 213 Ill. 268.

ATWOOD, PEASE & LOUCKS, for appellees:

The lower court had jurisdiction to entertain this petition and to try this cause because this was a petition filed in the very cause in which the receiver was appointed, and was not an independent suit in equity. *Brown* v. *Railway Co.* 5 Ill. App. 590; *Knickerbocker* v. *Benes,* 195 Ill. 434; 23 Am. & Eng. Ency. of Law, 1125; *Kennedy* v. *Railroad Co.* 3 Fed. Rep. 97; Beach on Receivers, par. 654; *Bank* v. *Landauer,* 68 Wis. 44.

Appellants made no objection below to the entertainment of the petition and did not in any way question the jurisdiction, nor did they ask for a jury. *Palys* v. *Jewett,* 32 N. J. Eq. 300; *Phillips* v. *Hood,* 85 Ill. 450; *Kennedy* v.

*Railroad Co.* 3 Fed. Rep. 97; *Nelson* v. *Bank,* 48 Ill. 36; *Stock Exchange* v. *McClaughry,* 148 id. 372; *Kimball* v. *Walker,* 30 id. 482; *Crawford* v. *Schmitz,* 139 id. 564.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Appellants' first and most serious contention is, that the circuit court of Cook county sitting in chancery had no jurisdiction to try this cause, for the reason that appellees' claim is for alleged damages growing out of a tort and is cognizable only in a court of law. The precise question presented by this assignment of error has not been decided by this court, so far as we have been able to find, and no case is cited by either side which we regard as an authoritative decision of the question. Appellants insist that the case of *Brown* v. *Wabash Railroad Co.* 96 Ill. 297, is an authority supporting their contention. We do not so regard it. The Toledo, Wabash and Western Railway Company was being operated by Jacob D. Cox as receiver, appointed by the concurrent orders of the court of common pleas of Lucas county, Ohio, the circuit court of Cass county, Indiana, and the circuit court of Vermilion county, Illinois, and while so operating, Roberts, a fireman, was killed through the alleged negligence of the receiver. Under an order of the court the railroad, and all of its property and equipment, had been sold and passed into the ownership of the Wabash Railway Company. A provision in the decree under which the property was sold required the purchaser to assume and pay all liabilities incurred in respect to said railroad or its business by the receiver during the pendency of the legal proceedings relating to the receivership and the subsequent sale. Assuming that this provision in the decree created a lien upon the property in the hands of the Wabash Railway Company, the administrator of Roberts filed an original bill in equity against the Wabash Railway · Company in the Sangamon county circuit court to ascertain and establish his damages resulting from the death of Rob-

erts and for an order requiring the Wabash Railway Company to pay it. This court, while conceding the existence of the lien, held that a court of equity would not by an original action take jurisdiction of a case involving a question of unliquidated damages arising from a tort. That case decides the familiar doctrine that a court of chancery is not the forum in which to settle purely legal questions. No question was there presented or decided as to the jurisdiction of a court of chancery, under whose direction a trust fund is being administered by its receiver, to determine any legal matter that may arise ancillary to the due administration of the trust property. A careful examination of that case shows that it has no application to the question involved in the case at bar.

*Knickerbocker* v. *Benes,* 195 Ill. 434, relied on by appellees, is a case substantially like the case at bar in its facts, and this court upheld a judgment growing out of a tort against a receiver where the damages had been ascertained and assessed by the chancellor, but no question was there raised or decided in respect to the procedure. It appears to have been conceded by the parties that the circuit court wherein the receivership was being administered properly took jurisdiction to determine the claim for damages. While this case is not a direct authority on the question here involved, it at least shows that a court of chancery did in that case take jurisdiction to hear and determine a matter sounding in damages growing out of a tort, and that its judgment has been affirmed by this court.

Appellants rely with great confidence on *Palys* v. *Jewett,* 32 N. J. Eq. 302, as supporting their position. That case was a suit against the receiver of a railway company for damages alleged to have been sustained by the plaintiff by reason of the negligence of the employees of the receiver in the management of a train of cars. The case was heard before the vice-chancellor, who found for the receiver. The report of the case which we have seen does not show how

the case was brought into court. The decision of the vice-chancellor is reversed on the merits and the cause is remanded, with directions to enter a judgment in favor of the plaintiff for $3000. From the report of the case it appears that the plaintiff, and not the receiver, was protesting against the trial of the case without a jury. In the course of the opinion, on page 317, it is said: "These observations constitute a pointed re-affirmation of the proper rule of practice as promulgated by Lord Eldon, establishing plainly, as they do, that in this class of cases the chancellor will not undertake to decide a purely legal question against the person who demands from him a trial at law."

From this quotation we infer, though the report does not so show, that the petitioner or plaintiff in that case had applied to the chancellor for leave to bring his action at law, which being denied, he was compelled to submit his case to the vice-chancellor. We reach this conclusion more readily from the fact that in *Potter* v. *Spa Spring Brick Co.* 47 N. J. Eq. 442, that court, in commenting on its earlier decision of *Palys* v. *Jewett*, said: *"Palys* v. *Jewett* was a proceeding by a person who had been injured by a railway train run by a receiver of the court, for redress in damages for such injury, and the opinion of the learned chief justice in the court of errors and appeals was based on the supposed fact (5 Stew. Eq. at pp. 318, 319,) that the petitioner had asked this court for leave to proceed at law, or at least for a trial by jury, and had been refused, and so was forced, against his will, to submit his case, in all its parts, to the determination of this court."

There are other expressions in the *Palys case* from which it is clear that the learned chief justice had in mind cases where the party was drawn, against his will, to litigate legal questions in a court of chancery. It is stated in that case as a reason why the court would consider the case on its merits, that no appeal had been taken from the order refusing a trial by jury. Further commenting on the *Palys*

*case,* the court wherein it was decided, ten years later, in *Potter* v. *Spa Spring Brick Co. supra,* said: "These cases (Palys and others) do not apply to a case where a party who has a cause of action against a receiver of this court comes voluntarily into the court and by his petition asks the court not to permit him to sue at law but to do him justice according to his own notion of what is just, submitting himself to the jurisdiction of the court and offering to do what the court deems equitable. And I am of opinion that in such a case it is competent for this court to hear and deal with his complaint, and that it does not lie in the mouth of its receiver to object to such assumption of jurisdiction."

It thus appears that *Palys* v. *Jewett, supra,* when carefully examined in the light of the subsequent case by the same court, cannot be regarded as an authority supporting appellants in the case at bar. Here, appellees voluntarily came into the court of chancery, not demanding a jury, but offering to submit their cause to the court for decision. No question as to the jurisdiction of the court to hear the case was made by either party in the court below and no request was made for a jury. Under such circumstances the practice has been, so far as we are able to ascertain from the adjudicated cases, for the court wherein the receiver was appointed to take jurisdiction and determine all matters ancillary to the proceeding, regardless of the character, importance or complexity of the questions involved. When a court of chancery appoints a receiver to take charge of the property and affairs of a corporation or other person, the receiver becomes, in a sense, the mere ministerial agent of the court. His possession of the property is the court's possession, and it has often been adjudicated a contempt of court to bring a suit, or otherwise interfere or intermeddle with the receivership affairs, unless leave is obtained for that purpose from the court wherein the receivership is being administered. So complete and exclusive is the jurisdiction of the court appointing the receiver, that it is held

by many high authorities, among them the United States
Supreme Court, (*Barton* v. *Barbour*, 104 U. S. 126,) that
a judgment rendered against a receiver by another court
without leave to bring the suit is void for the want of ju-
risdiction. This court has not gone to that extent. The
rule established by this court in *Mulcahey* v. *Strauss*, 151
Ill. 70, is, that while it is a contempt of court to bring suit
against a receiver without leave and the court appointing
the receiver may attach for contempt or enjoin the proceed-
ing, the failure to obtain leave does not oust the other courts
of the State of jurisdiction. This rule is, however, subject
to an exception in cases where the purpose of the suit is to
deprive the receiver of his possession of the property of the
receivership. In such cases the judgment is void unless
leave is obtained to prosecute such suit. (*St. Louis, Alton
and Springfield Railroad Co.* v. *Hamilton*, 158 Ill. 366.)
When, in furtherance of justice, it becomes necessary for
a court of equity to lay hold of the affairs of an insolvent
or failing debtor and appoint a receiver to manage, operate
or wind up his affairs, it would be a strange restriction up-
on the powers of such court if it could adjust only such
questions arising in the course of the administration as are
ordinarily cognizable in a court of equity. The jurisdic-
tion of the court of equity having attached in the first in-
stance to protect the equitable rights of creditors, it will be
retained to do complete justice and fully administer upon
the property, and in so doing a court of chancery may, if
it sees proper to do so, adjust claims against the property
arising either out of tort or contract and determine the
amount thereof, and make all proper orders in respect to
the time and manner of their payment.

We perceive no reason why the practice in this State
should not conform to and be governed by the same prin-
ciples that are applied in the Federal courts, and especially
as the practice existed in those courts prior to the passage of
the act of Congress approved March 3, 1887, which act per-

mits suits at law to be brought against a receiver appointed by a Federal court without obtaining leave from the court making the appointment. The rule adhered to by the Supreme Court of the United States is thus stated by Mr. Justice Woods in *Barton* v. *Barbour, supra:* "Such is not the course and practice of courts of equity in administering a trust estate. The costs and expenses of the trust are allowed by the court upon a reference to its own master. If the adjustment of the claim involves any dispute in regard to the alleged negligence of the receiver or any other fact upon which his liability depends, or in regard to the amount of damages sustained by a party, the court, in a proper case, in the exercise of its legal discretion, either of its own motion or on the demand of the party injured, may allow him to sue the receiver in a court of law or direct the trial of a feigned issue to settle the contested facts. The claim of the plaintiff, which is against the receiver for a personal injury sustained by her while traveling on the railroad managed by him, stands on precisely the same footing as any of the expenses incurred in the execution of the trust, and must be adjusted and satisfied in the same way." We find nothing in the adjudicated cases in this State opposed to the doctrine of *Barton* v. *Barbour,* and it is supported by the weight of authority outside this State and seems to be well grounded in sound reason.

Appellants insist that the effect of sustaining the jurisdiction of chancery in cases of this character is to deprive the party of the constitutional right to a trial by a jury. The answer to this contention is, that the right of trial by jury, considered as an absolute right, does not extend to cases of equitable jurisdiction. (5 Pomeroy's Eq. Jur. sec. 171, and cases there cited.) If appellants' argument is sound on this point there would be many cases of equitable jurisdiction that courts of equity could not settle, because, as an incident to the main controversy, some matter would arise in which the parties would be entitled to a jury if the same

matter should arise as a distinct transaction in a court of
law. In bills to foreclose mortgages, for an accounting and
relating to partnership affairs, and in many others, mat-
ters frequently arise for determination which, if they stood
alone and disconnected with other circumstances which give
a court of equity jurisdiction, would be properly cognizable
in a court of law and triable by a jury. But it is the con-
stant practice of courts of chancery to adjust all questions
arising between the parties relating to the subject matter of
the litigation which are brought into issue by the pleadings,
regardless of whether such matter is legal or equitable in
its character. We have no doubt of the jurisdiction of the
circuit court of Cook county, sitting as a court in chancery,
to hear the evidence and adjudicate upon appellees' claim
and to make a final order for its payment.

The other assignments of error do not require elaborate
discussion. It is urged that the court erred in the exclu-
sion and admission of testimony. This being a chancery
proceeding, any error in this regard is unimportant if there
is competent evidence in the record sufficient to support the
decree and the evidence which ought to have been consid-
ered would not, if considered, change the result. (*Trelea-
ven* v. *Dixon,* 119 Ill. 548, and cases there cited.) Without
intimating any dissatisfaction with the rulings of the trial
court in this regard, we are content to rest our conclusion
on the ground that the competent evidence in the record is
quite sufficient to support the decree, and that no evidence
excluded could have led to any different result.

Other assignments of error relate to questions of fact,
such as that the decree is excessive and that there is a fail-
ure of the evidence to support the findings. While the find-
ing of the court below, and its approval by the Appellate
Court, are not, in a chancery proceeding, binding on this
court, still we will not reverse a decree unless it is clearly
against the evidence. After a careful examination of the
evidence, aided by the exhaustive briefs and the oral argu-
230—9

ments of counsel, we are unable to find any reason for dis-
agreeing with the trial and Appellate Courts on the questions
of fact involved.

Finding no error in this record the judgment of the Ap-
pellate Court for the First District is affirmed.

*Judgment affirmed.*