[File No. 6231.]

L. R. BAIRD, as Receiver of Forbes State Bank of Forbes, N. D., Respondent, v. FORBES STATE BANK OF FORBES, N. D., et al., and the State of North Dakota for Itself and on Behalf of All Creditors of the Defendant Bank, Appellants.

(251 N. W. 846, 91 A.L.R. 1113.)

Opinion filed December 19, 1933.

*F. J. Graham,* for appellants.
*Zuger & Tillotson,* for respondent.

CHRISTIANSON, J. This controversy arises in a proceeding to liquidate an insolvent bank and comes before this court for review under the provisions of Laws 1931, chapter 96, § 51 (e). It involves an order of the district court of Burleigh county authorizing the receiver of the Forbes State Bank to borrow moneys from the Reconstruction Finance Corporation with which to pay dividends to the creditors of the bank. Upon the hearing had in the trial court one Graham, a stockholder and creditor of the defendant bank, appeared and resisted the application of the receiver for authorization to borrow money from the Reconstruction Finance Corporation for the purpose of paying such dividends on the ground that the receiver was without authority to borrow money for such purposes and that the court was without authority to grant him permission to do so. The trial court overruled the objections thus made and entered an order approving and allowing the application of the receiver.

The facts necessary to an understanding of the controversy are substantially these. The Forbes State Bank is a banking corporation organized under the laws of this state.

In January, 1932, the attorney general instituted a proceeding for the liquidation of the bank. That proceeding was instituted under the provisions of the statute relating to the liquidation of insolvent banking corporations organized under the laws of this state. Laws 1931, chapter 96, § 51. That statute makes it the duty of the state examiner "whenever any bank shall be closed as insolvent" to "certify such fact to the attorney general." And it makes it the duty of the attorney general, "immediately upon receiving such certificate," to institute a proceeding "in the name of the state of North Dakota, for itself, and on behalf of all creditors of such bank, as plaintiffs, against said insolvent bank as defendant, for the purpose of declaring it insolvent and winding up its affairs as an insolvent banking association." The statute further provides that upon the filing of such complaint the court "shall appoint a receiver . . . of all said insolvent banks, which receiver shall have all the powers and authority ordinarily possessed and exercised by receivers of insolvent corporations or prescribed

by statute and the court shall have all the power and authority with regard to the administration and closing of the affairs of such banks as are ordinarily possessed and exercised by courts of equity over the affairs of insolvent corporations." It is further provided that "the receiver so appointed by the court shall supersede and supplant any receiver theretofore appointed by the banking department, or by any other court, or any examiner or officer of the banking department that may be in charge of any such bank." Laws 1931, chapter 96, § 51 (h). The statute further provides that the receiver appointed shall, from time to time, apply to the court "for guidance and instructions and for the purpose of obtaining orders and directions with reference to the administration of the affairs or the disposition of the property of any of the banks under his control, as receiver, in the same way and as far as may be practicable under the same course of procedure that receivers appointed by district courts apply to such courts." Laws 1931, chapter 96, § 51 (i).

The general statute relating to receivers provides: "The receiver has, under the control of the court, power . . . generally to do such acts respecting the property as the court may authorize." Comp. Laws 1913, § 7591. The general statute does not, nor does the statute under which the receiver here was appointed, specifically authorize a receiver to borrow money. But the statute under which the receiver here was appointed does give to him "all the power and authority ordinarily possessed and exercised by receivers of insolvent corporations or prescribed by statute;" and it confers upon the court making the appointment "all the power and authority with regard to the administration and closing of the affairs of such banks as are ordinarily possessed and exercised by courts of equity over the affairs of insolvent corporations." Laws 1931, chapter 96, § 51 (h).

The constitution of the state specifically vests in the district courts (except as otherwise provided in the constitution) original jurisdiction "of all causes both at law and equity." N. D. Const. § 103. It cannot be doubted therefore that the district court was vested with power to entertain the proceeding to liquidate the bank and to appoint the receiver (State v. First State Bank, 52 N. D. 231, 202 N. W. 391) ; and that it is vested with broad discretionary powers in supervising the

administration of the liquidation of the closed bank. While it has been said that the power of a court of equity to authorize a receiver to borrow money necessary for the preservation and management of the property should be exercised with great caution, the existence of the power is settled beyond all controversy. 53 C. J. 163; 1 Clark, Receivers, 2d ed. §§ 455, et seq.; 8 Fletcher, Cyc. Corp. § 5310, p. 8926; 1 Tardy's Smith, Receivers, 2d ed. p. 202.

The rule to be deduced from the authorities is summarized in Corpus Juris thus:

"The court may authorize the receiver, from time to time, to borrow money when necessary for the preservation of the property and the proper administration of the estate, and persons who lend or advance money to a receiver, under the authority of the court, in order to enable him to accomplish the purposes of his appointment, should be reimbursed by him out of the funds of the estate. But while courts will be zealous to protect the rights of parties who may have furnished money for the preservation of the trust property, equal care will be observed that the property is not wasted by the receiver's improvident acts. . . .

"A receiver has no power, without specific authorization by the court, to give security for money borrowed, and an order authorizing him to borrow money upon his certificates does not confer upon him power to give any other security. The court may, however, in a proper case and where there is a necessity therefor, authorize the receiver to execute a mortgage on property of the estate for the purpose of securing moneys borrowed to preserve or administer it, or to give other security for a debt so incurred." 53 C. J. pp. 163, 164.

In discussing the right of a receiver to borrow money and the source of such right, a leading text writer says:

"Where the order of the court gives to the receiver authority to continue in the possession and management of the property, he may in good faith borrow the necessary money for the successful and proper management of such property, and the claim of the lender will be superior to that of the bondholders. . . .

"The source of this power is to be found in the inherent right of the court to preserve the receivership property from waste, damage, or

loss. And in case of public corporations the public have interests that are to be protected. The power to borrow money in all cases presupposes authority from the court given for that purpose, . . ." 1 Tardy's Smith, Receivers, 2d ed. pp. 202–205.

We are all agreed that the receiver appointed under the provisions of Laws 1931, chapter 96, § 51 (h), on being authorized by the court so to do, has power to borrow money when necessary for the preservation of the property and the proper administration of the estate.

The question next presents itself whether the loan the receiver here seeks to make from the Reconstruction Finance Corporation for the purpose of paying dividends to creditors is one which the district court might authorize. A careful consideration of this question leads us to the conclusion that it must be answered in the affirmative. The statute, under which the liquidation proceedings involved here is brought and under which the receiver here was appointed, was enacted for the purpose of safeguarding the interests of creditors of insolvent banking corporations.

"The primary object the lawmakers had in mind was to provide an economical and orderly procedure for the liquidation of insolvent banking corporations, through judicial proceedings. It was desired to have all such proceedings brought in one court, and to have the receiver, or two joint receivers, appointed in such action placed in charge of the affairs of all such insolvent banking corporations. . . .

"According to the preamble of the act the lawmakers desired to remedy certain mischiefs and defects in the mode then existing for liquidating insolvent banking corporations. They determined that the then existing mode was productive of injustice; and they decided that the best way to correct the mischief in the then existing laws was to have all actions for the liquidation of such insolvent banking corporations brought in one court, and to have the affairs of all such banking corporations placed in the hands of one receiver, or two joint receivers, appointed by such court." State v. First State Bank, 52 N. D. 231, 246, 247, 202 N. W. 391.

The preamble of the original act providing for the proceeding under which the bank here is being liquidated and the receiver here was appointed also declared in effect that one of the objects the lawmakers sought to accomplish was to prevent a sacrifice of the assets of the in-

solvent bank. In short, the great object of the act was to obtain a more efficient administration, a more orderly liquidation and to preclude the necessity of sacrificing the property of any one of the insolvent banks, to the end that ultimately greater dividend payments might be made to the creditors of the various banks. The provision made by the Federal government for loans by the Reconstruction Finance Corporation to the receiver of an insolvent state bank for the purpose of paying dividends to the creditors thereof was made with the unquestioned object in view of promoting, and aiding the orderly and proper liquidation, to preserve and safeguard the assets of the bank in the hands of the receiver and to preclude a sacrifice of such assets.

The borrowing of money by the receiver of an insolvent banking corporation from the Reconstruction Finance Corporation is quite a different thing from borrowing from a private lender. The provision made by the Federal government to loan moneys to insolvent banks in the process of liquidation to enable the receiver to make payments to creditors in anticipation of ultimate liquidation of so-called "frozen assets" does not spring from the profit motive. On the contrary, it springs from a motive to aid in the very purpose for which a receiver may be authorized to borrow moneys, namely, to preserve and safeguard the property in his hands, and obtain the greatest possible benefit therefrom for those for whom it is being held. Presumptively the policy of the Federal government will continue to be controlled by this motive and purpose. The power of a court to authorize a receiver to incur an indebtedness should be exercised to promote the best interests of those interested in the estate.

It is presumed that the trial court has so exercised its powers in this case, and the record confirms the presumption. The petition of the receiver sets forth that there has heretofore been paid dividends to the creditors aggregating in all forty-five per cent of the approved claims; that the remaining assets of the bank consist largely of the promissory notes of farmers and business men residing in and about the village in which the bank was operating and of certain real estate in that vicinity; that all the assets remaining in the hands of the receiver "are slow in character but, if conserved, have considerable value; that in order to liquidate the said assets in an orderly manner, without causing great sacrifice to the borrowers, it is necessary that such period

of liquidation be extended over a period of two or three years." These facts are not denied by the appellant.

We are agreed that the facts presented in this case justified the trial court in making the order which it did. The plan adopted by the Federal government authorizing the Reconstruction Finance Corporation to make loans to banks in process of liquidation was intended to meet just such a contingency as that presented here. It is inconceivable that any creditor will be harmed. The money is borrowed at a low rate of interest and is at once distributed to the creditors. The liabilities are not increased at all as the sum borrowed goes immediately in reduction of the liabilities. The assets pledged as security for the loan do not go into the hands of a private lender, actuated by the profit motive, but to a governmental agency operating for the purpose of aiding in converting the assets so pledged into money in such manner as shall realize the greatest possible amount for the creditors of the bank.

On the oral argument attention was called to the following decisions involving loans by the Reconstruction Finance Corporation to closed banks in process of liquidation: Bassett v. Merchants' Trust Co. 115 Conn. 530, 161 Atl. 789, 82 A.L.R. 1223; Martin v. Citizens' Bank, 134 Kan. 650, 8 P. (2d) 81; State ex rel. Sorensen v. Nebraska State Bank, 124 Neb. 449, 247 N. W. 31; Blades v. Hood, 203 N. C. 56, 164 S. E. 828; Riches v. Hadlock, 80 Utah, 265, 15 P. (2d) 283. No case, however, has been called to our attention involving statutory provisions similar to our own. The decisions in the four cases first cited sustained the proposed loans. But the Supreme Court of Utah, in the case last cited, held that there was no authority for the loan and the appellant here invokes that decision in support of the argument that the district court was without authority to authorize the loan involved here. In our opinion the Utah case has little or no application to the question involved here. That case arose under a statute by the terms of which the bank commissioner became the liquidating agent of insolvent banking corporations. The Utah court pointed out that the bank commissioner was not a chancery receiver, but a statutory officer possessing only such powers as were conferred by the statute. The court said:

"By the statute referred to it is clear that as to banks and banking institutions the Legislature in such case took from the courts, or at-

tempted to do so, their time-honored equity or chancery prerogatives in the appointment of receivers and in directing and controlling them as officers of the court. The competency of the Legislature so to do is not on this proceeding presented or challenged. With the wisdom of the legislation we are not concerned. Under the statute, the taking possession of the property and business of a bank or banking institution by the bank commissioner is not as an officer of a court. His custody of the property is not, as is the custody of a receiver appointed by the court, the custody of the court. Under the statute, the commissioner takes possession and holds it without the aid of, and despite, judicial action. It is of little moment what the commissioner be called, whether a statutory receiver, or what not. It, perhaps, is best to call him what the Legislature called him, the bank commissioner, with powers and duties conferred upon him as prescribed by the Legislature. He is a mere executive creature of the statute, not of the court, and can exercise only such powers as the statute has given him; and no order of the court applied for can be broader than the statute. In other words, he is a public agent or officer of the state and derives his powers from the statute. . . .

"A striking dissimilarity between a chancery receiver and the bank commissioner as here created by the statute is, that the former is a creature and an officer of the court, who in all primary matters is under the orders and directions of the court and whose custody of property and assets of the bank is the custody of the court to be administered under its orders and directions, while the latter is a creature and a public officer of the state, whose custody of the property and assets of the bank is not the custody of the court, and where the assets are to be administered by him without aid or direction of the court, except as by the statute otherwise provided. . . .

"The receiver here is an officer of a court exercising equity jurisdiction.

"He is the agent or representative of the court in holding any property that the court may acquire jurisdiction over and in disposing of the same; the hand and arm of the court through whom the court acts. He is appointed by and is removable at the pleasure of the court. He is responsible to no one but the court. His compensation is fixed by the

court. He can sue or be sued but only under the direction and with the permission of the court. His authority comes from the court and in its exercise he has no discretion independent of the court. He exercises none of the powers of civil government." Baird v. Lefor, 52 N. D. 155, 163, 201 N. W. 997, 38 A.L.R. 807.

The decision involving a state of facts and legal questions more nearly akin to those involved here than any other is State ex rel. Sorensen v. Nebraska State Bank, 124 Neb. 449, 247 N. W. 31, supra. That case involved a receiver appointed by the court in a proceeding for the liquidation of a bank, and an order of the trial court approving his application for authority to borrow money from the Reconstruction Finance Corporation for the purpose of making payments to creditors, and to pledge certain assets of the insolvent bank as security for the proposed loan. In affirming the decision of the trial court the Supreme Court of Nebraska said in part:

"The right of the district court to authorize the receiver of a state bank to borrow money and to pledge assets is never absolute: its necessity must be determined by a court of equity in its administration of justice among those who have a pecuniary interest in the affairs of the bank. The trial court necessarily inquired into and judicially considered all the facts, including those relating to the conditions of the bank, the true interests of the preferred creditors thereof, and the terms imposed by the Reconstruction Finance Corporation for the proposed loan. We find in its decree, approving and authorizing the same, no abuse of its undoubted discretion."

What was said there is applicable here. We are all agreed that the order of the trial court should be, and it is, affirmed.

BURR, Ch. J., and MOELLRING, NUESSLE and BURKE, JJ., concur.