John F. DEVINE, Plaintiff, v. A. V. CORDOVADO
and Cordovado Gold Dredging Company,
a corporation, Defendants.

Reinhold NEWBURG, Plaintiff, v. CORDOVADO GOLD
DREDGING COMPANY, a corporation, Defendant.

Nos. 3242, 3239.

District Court, Alaska. Second Division. Nome.

Oct. 20, 1954.

234

236

Collins & Clasby, Fairbanks, for W. W. Tuttle, petitioner.

E. P. McCarron, Fairbanks, for A. V. Cordovado, respondent.

HODGE, District Judge.

These causes of action have been a long time pending in this court upon a receivership under the laws of Alaska relating to insolvent corporations, and are presently before the Court upon a petition of the receiver for authority to reimburse the defendant A. V. Cordovado for an investment made by him for the benefit of the estate, subsequent to the appointment of the receiver, for the purchase of an interest in a group of mining claims being operated under lease by the receiver; and the counter-affidavit of said defendant resisting such petition and claiming royalties for mining operations on said claims.

The complaint in the Newburg case filed July 1, 1935, praying for the appointment of a receiver, lists assets of. the defendant corporation consisting principally of some fifty patented and unpatented gold placer mining claims, including what is designated as the "Dashley Group," composed of "Sunflower," "Superior," "Rainbow," and "Little Rainbow" claims. The order appointing a receiver authorizes and directs him to "immediately take possession of all of said mining property, both real and personal, and

to operate the same." . Shortly thereafter the Devine case was filed, in which case an order was entered appointing the same receiver for the same properties as in the Newburg case, with equal authority. Thereafter the receiver has exercised such duties in both actions, consolidated. Subsequent receivers have been appointed with like authority.

The receiver took possession of all such properties, which have ever since been operated by him under contract and leases, and are presently under lease to the Casa de Paga Gold Co., which provides for 10% royalty to the receiver upon the operations of the lessee with its gold dredges. Each lease has covered all of said mining claims, expressly including the "Dashley Group." Creditors' claims were filed totaling over $300,000 including mortgage liens and Federal taxes. The receiver, under orders of the Court, issued receivership certificates aggregating $18,000 for purposes of financing operations and payment of preferred claims. All of the preferred claims and receiver's certificates have since been paid, but there remains unpaid claims of general creditors amounting to $203,304, including promissory notes listed in the receiver's reports aggregating $95,245, plus accrued interest to December 31, 1953 amounting to $214,110. The whole proceeding has appeared interminable but the present receiver is now diligently undertaking to commence payment to the unsecured creditors of the principal amount of their claims; payment of any accrued interest thereon appears definitely hopeless.

The present lease was originally made to the Dry Creek Dredging Co., executed upon stipulation of all parties interested, on September 27, 1948, and was assigned to the present lessee, successor in interest, with the consent of all parties, on January 18, 1950. The defendant Cordovado expressly consented to the terms of said lease by letter to the receiver dated August 7, 1948, agreeing to specified royalty to be paid the receiver,

> "to apply on all the mining claims under the lease belonging to the Cordovado Gold Dredging Co. or

myself * * * starting from the beginning of the present mining season and to continue until the end of the present lease and thereafter until the ground or claims is all mined out, whether under the control of the receiver or the Cordovado Gold Dredging Company."

Such royalty was subsequently reduced, likewise with the express consent of Cordovado. The lease provides that it shall

"continue for an indefinite period and until all mining claims listed shall be completely worked out and the minerals and values extracted therefrom,"

unless sooner forfeited or determined through violation of any agreement of the lessee or upon termination of the receivership.

A deed was executed June 27, 1932, from A. V. Cordovado to the Cordovado Gold Dredging Company covering all of the mining claims described in the complaint, then held by Cordovado, including the "Dashley group," which deed, however, is one of quitclaim. It is clear that until 1947 all parties concerned believed such corporation to be the sole owner of such group of claims, acquired by Cordovado by deeds dated November 10, 1930, and October 23, 1930, from Boris Magids and Frank G. Henry. It appears also undisputed that some time in 1947 it was discovered that Anna H. Peterson was the owner of an undivided one-fourth interest in such group of claims, and that Cordovado purchased such interest from her for a recited consideration of $2,500, securing a deed which was destroyed by fire and replaced by a second deed executed by the executors of Mrs. Peterson's estate dated April 15, 1950; and that on the same day he conveyed to the Casa de Paga Gold Co. an undivided one-eighth interest in such claims, for a recited consideration of $1,250. The dispute is as to the oral agreement with the receiver at the time of such acquisition.

The petition of the receiver recites these facts and alleges that the defendant Cordovado reported the Peterson claim to O. D. Cochran, then receiver (in 1947), that the receiver was not then in a position to purchase such outstanding interest, and that accordingly at the request of the receiver, Cordovado purchased such interest for $2,500, "on the understanding with the receiver that it would be for the benefit of the estate, and, therefore, reimbursable for Mr. Cordovado." The petition states that the acquisition of such outstanding interest was a benefit to the receivership, that the claims have produced a sufficient royalty to justify the cost of such acquisition, and that no reason exists, known to him, why the persons having advanced the money for such acquisition should not be reimbursed.

An Order to Show Cause why such reimbursement should not be authorized was entered directed to all interested parties, including the executors of the estates of the plaintiffs, having been substituted for them, the defendants, and the Casa de Paga Gold Co. No one appeared in objection thereto except the defendant Cordovado, who filed a "Counter-affidavit" in which he alleges the acquisition of such interest on May 2, 1947, half with money advanced by Casa de Paga, states that he

> "was willing at that time to transfer and have transferred to the Cordovado Gold Dredging Co. the one-fourth interest aforesaid, and offered the same to the receiver of said company, O. D. Cochran, for the same purchase price,"

but that the receiver reported that he had no funds with which to purchase such interest, who advised that the title be held in his own name,

> "and that he would thereafter receive a proportionate share of the royalties and profits of the mining operations on said property";

that he now holds a one-eighth interest in such group, and

> "does not desire to sell the same to the Cordovado Gold Dredging Co. at the price set in the afore-

said Order to Show Cause, but that he is entitled
to and expects to receive his rightful interest in
profits from mining,"

claiming a proportionate share of all royalties from mining
operations on said claims since May 2, 1947.

According to a report from the receiver the amount of
royalties collected from production on the group of claims
during such period amounts to about $17,923.50 to date, of
which one-eighth claimed by Cordovado would be $2,240.44,
with a like amount if allowed to be credited to the Casa de
Paga Gold Co.,—plus future production.

There appears nothing of record in the voluminous files
in these cases carefully examined by me to indicate any such
claim of Cordovado for a share of royalties to have ever
previously been made by him. Reports of Alva A. Daue,
previous receiver, for the years 1950 and 1951 mentioned
the acquisition in 1950 by the Casa de Paga Gold Company
of the one-eighth interest in such group purchased from Mr.
Cordovado, first reported that the company claimed exces-
sive payments of royalty on account of ownership of such
interest, but later reported that such claim had been dropped.
In his report for 1953 the receiver reported that the Casa de
Paga Gold Company has now asked if it would be possible
for the receiver to pay to them the amount of money which
they paid to Cordovado for such interest. The matter was
never brought to the attention of the Court otherwise, ex-
cept as to reimbursement of both parties discussed with the
receiver and his attorneys relative to such report.

While this matter has been pending decision, Mr. Cordo-
vado has offered to compromise his claim by accepting in-
terest at the legal rate upon his investment if his claim for
royalties be not allowed, which also will be considered.
Such interest, if allowed, would involve an additional ex-
penditure from the estate of over $1,000, assuming that
Casa de Paga would also be entitled to such.

The brief of the receiver is devoted largely to a discus-
sion of the rights which Mrs. Peterson may have had,—

whether to maintain a quiet title action against the receiver, or for partition, trespass and damages,—and suggests that we should assay the possibilities inherent in such claims and of defenses available to the receiver, together with the cost of litigation, to determine whether or not the Court will grant authority to "negotiate a settlement with these people," as successor in interest to her; and that this proceeding should be regarded as an offer to compromise the outstanding claims of Cordovado and the Casa de Paga Co. This is not the issue as I view it, but rather to determine whether the Court has authority to authorize payment of royalties to Cordovado, or reimbursement, as a matter or right; and whether if the latter, interest should be added. But the question of the rights and remedies of Mrs. Peterson should be noted in determining the true nature of the agreement with the receiver, and especially whether or not it was intended for the benefit of the receiver or Cordovado.

There appears no question but that the receiver has throughout treated the entire interest in these claims as being in the possession of and under the control of the receivership. Indeed it is held that where a receiver is appointed to take possession of an undivided interest in land, the receivership should include the entire property, as otherwise a receivership of property owned or claimed in undivided interests would not be effective. Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217 at page 1227; and Annotation page 1251. It is also well established that it is the duty of the receiver to protect the property for the benefit of all parties interested, or ultimately entitled thereto; that the appointment of a receiver does not affect the rights of others as to the property in his possession; and that he holds such property by the same right as the person or corporation for whom he is receiver, subject to all liens and claims existing at the time of his appointment. 75 C.J.S., Receivers, §§ 103, 104, 112, 129, pp. 745, 747, 753, 767; 45 Am.Jur. 129;

Powell v. Maryland Trust Co., 4 Cir., 125 F.2d 260; Reed v. Alaska Mines Corporation, 6 Alaska 370.

■■ It is held generally that in a receivership matter the court has authority to adjust claims against the property arising out of contract or tort. No one may enforce a right to specific property in the possession of the receiver except on application to the court which appointed him, the property being in the custody of the court and immune from interference without permission of the court. .45 Am.Jur. 187, Sec. 242; 189, Sec. 244; 185, Sec. 237; Shedd v. Seefeld, 230 Ill. 118, 82 N.E. 580, 13 L.R.A.,N.S., 709; 75 C.J.S., Receivers, § 130, p. 767.

If therefore the interest of Mrs. Peterson had not been acquired, she would have been entitled to a proportionate share of the royalties under the lease, had she made proper claim therefor. But does this mean that Cordovado, having acquired such interest, is entitled thereto? Decision on this question rests partly at least on construction of the oral agreement referred to. We are without benefit of any information from Mr. Cochran, who died in January, 1948, and hence such construction must be determined by the circumstances surrounding the acquisition. Without indulging in presumptions, it does appear that Mrs. Peterson made some claim to Cordovado and no doubt the acquisition of her interest was agreed upon to compromise or settle such claim. If this were done for the benefit of Cordovado he could have purchased such interest without permission of the receiver or the court and then presented his proper claim to the court. He did not do so, but instead arranged such acquisition with the receiver, with the apparent purpose that the receiver may operate all interest in the claims without interference from or claim of Mrs. Peterson. It will be observed that *after* such acquisition, and *after* the agreement with Mr. Cochran, Cordovado consented to the provisions of the lease that *all royalties* on the mining claims owned by the corporation or himself be paid to the receiver. Also that Cordovado does not expressly deny his willing-

ness or agreement at that time to accept reimbursement, but in effect seeks to avoid such. Counsel for the defendant concedes in his brief that Cordovado had orally agreed with the receiver to transfer the title, but contends that the "purchase price" included a proportionate share of the royalties. This is not the language of the affidavit as I interpret it, but if so intended such would be like "having your cake and eating it, too," and certainly cannot be sustained.

Under all of such circumstances it must be held that such acquisition was intended for the benefit of the receiver. There would be no such benefit if the receiver were merely to pay over any claimed royalties to Cordovado instead of to Mrs. Peterson; whereas the benefit on the basis of reimbursement by the receiver has been proven. I am satisfied from all of the record that Mr. Cordovado did make the oral agreement with Mr. Cochran, receiver, as set forth in the petition.

Moreover, Cordovado is or should be precluded from now asserting any such claim to royalties by reason of his previous conduct, inconsistent with such claim, in agreeing to the terms of the lease, and also his delay in asserting such claim, upon the principle of equitable estoppel. 19 Am.Jur. 633, et seq., Sections 34, 36, 39, 42, 50, 55; Hubbard v. Hubbard, 5 Alaska 478; Cascaden v. Dunbar, 9 Cir., 3 Alaska Fed. 703, 191 F. 471; Morency v. Floyd, 2 Alaska 194; State of Oklahoma v. State of Texas, 268 U.S. 252, 45 S.Ct. 497, 69 L.Ed. 937; Kirk v. Hamilton, 102 U.S. 68, 26 L.Ed. 79. In such case actual intent to mislead or defraud are not essential where the receiver relied upon such conduct in good faith and the result would be inequitable or to the prejudice of the receiver. 19 Am.Jur. 646, Sec. 48; Annotation 13 L.R.A. 270; American Gas & Ventilating Machine Co. v. Wood, 90 Me. 516, 38 A. 548, 43 L.R.A. 449.

This doctrine may be invoked in this instance even though not specifically pleaded, under the exception to the

general rule where the party has no opportunity to plead; and also where the facts constituting the estoppel appear from the pleadings. 19 Am.Jur. 836, Sec. 181, 838, Sec. 182; Annotation 120 A.L.R. 76, 86. The affidavit of Cordovado constituted no answer or counterclaim, and no reply could be made to such. The case of Mayhood & Stewart v. Letender, 4 Alaska 226, may be distinguished, as in such case the estoppel relied upon was by reason of a redelivery bond, and not an estoppel in pais.

We come then to the matter of reimbursement. The defendant contends that the agreement is unenforceable by either of the parties under the Statute of Frauds, which requires all contracts involving real property to be in writing. Such defense cannot be raised in this proceeding as it must be specifically pleaded. 49 Am.Jur. 907 et seq., Secs. 601–604. In fact, this proceeding cannot be considered as an action to enforce the oral contract, but one to authorize the receiver to perform an agreement made by his predecessor. For the same reasons the Statute of Limitations cannot apply. Sec. 55–2–1, A.C.L.A.

Claims arising out of transactions with the receiver or out of the conduct of the receivership are ranking claims against the estate. Indeed a court which appoints a receiver owes a duty to see to it that those who deal with him are paid their just demands. So persons who lend or advance money to the receiver under authority of the Court are entitled to reimbursement out of the estate. 45 Am.Jur. 198, 199, Sec. 255; Parks v. Central Door & Lumber Co., 164 Or. 363, 102 P.2d 706, 128 A.L.R. 375; Baird v. Forbes State Bank, 64 N.D. 239, 251 N.W. 846, 91 A.L.R. 1113. Although not previously authorized there appears no just reason why such authorization should not now be granted.

Counsel for the defendant urges that the receiver has not offered to purchase Cordovado's outstanding interest; and maintains that the receiver is not entitled to either

"a conveyance upon terms, or title by estoppel." But we are not concerned with such title or claim of title. Under the provisions of Sections 36–1–144 and 36–1–145, A.C.L.A. the receiver of an insolvent corporation is vested with all real and personal property, with provision for reconveyance to the corporation of its properties at the termination of the receivership. But this does not apply to the interest acquired by Cordovado personally, which is still held by him, whether acquired before or after the appointment of a receiver. 45 Am.Jur. 125; 75 C.J.S., Receivers, § 103, p. 745. Hence I do not find that it is necessary to carry out such agreement that conveyance of such interest be required as a condition of reimbursement, or that the title be vested in the receiver.

Both defendant Cordovado and the Casa de Paga Gold Co. are equitably entitled to be reimbursed for the amount invested by them for the benefit of the receivership, pursuant to the oral agreement made with the then receiver.

Finally, there is the question of interest to be allowed. It has been stated that where delay in payment of a claim is due to administration of the law, interest on claims should not be allowed, such as to permit one creditor to obtain an advantage over another thereby. As against the receivership debtor, all creditors are entitled to be paid in full with interest to the time of payment, and will be paid if the funds are sufficient. And where the property in the hands of the receiver is insufficient to pay the principal of all claims and no mortgage or other claim of lien is relied upon, the decisions have usually declined to allow any interest in favor of preferred claims. 45 Am.Jur. 204, par. 265; Thomas v. Western Car Co., 149 U.S. 95, 13 S.Ct. 824, 37 L.Ed. 663; Leach v. Sanborn State Bank, 210 Iowa 613, 231 N.W. 497, 69 A.L.R. 1206, and Annotation page 1210. In view of the obligations of the receivership yet remaining unpaid as outlined above it would be wholly inequitable to allow such interest, at least until the principal of all creditors' claims has first been paid.

█ The petition of the receiver is granted, without prejudice to any right of action which the defendant Cordovado may have against the receiver upon his claim for royalties or interest; and the receiver is authorized to reimburse both parties for their investment in the sum of $1,250 each, without interest.