STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, APPELLANT, V. STATE BANK OF MINATARE, APPELLEE: E. H. LUIKART, SECRETARY OF THE DEPARTMENT OF TRADE AND COMMERCE, APPELLANT.

FILED APRIL 16, 1932. No. 28195.

*Arthur F. Mullen* and *F. C. Radke*, for appellants.

*Skiles & Skiles, Mothersead & York* and *I. D. Beynon*, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

ROSE, J.

This is a controversy over the appointment of a successor to a receiver who had been engaged in liquidating the affairs of the State Bank of Minatare, an insolvent corporation.

In a proceeding in the district court for Scotts Bluff county, Clarence G. Bliss, secretary of the department of trade and commerce, the branch of government having supervisory control of state banks, was appointed receiver May 31, 1929, and was directed by judicial order to wind up the affairs of the State Bank of Minatare. He qualified and entered upon the performance of his duties, but, during the course of liquidation, resigned as receiver, submitted his final report as such to the district court and, November 2, 1931, applied for an order approving it, releasing his bond and discharging him. On that date E. H. Luikart, who became secretary of the department of trade and commerce July 8, 1931, made in that capacity an application to be appointed receiver in place of Bliss. Upon a hearing on both applications, the trial court approved the final report of Bliss, released his bond, discharged him as receiver, overruled the application of Luikart, and appointed A. E. Torgeson, the latter having been assistant receiver under Bliss. Luikart appealed to the supreme court.

The propositions argued on appeal by counsel for Luikart seem to be about as follows:

The former method of liquidating insolvent state banks by means of individual receiverships in the district courts was superseded in 1929 by legislation transferring that function of government to the department of trade and commerce. Comp. St. 1929, secs. 8-181, 8-191, 8-194. The statute now requires liquidation by that department and gives it possession of the corporate assets. Under the present system of liquidation the secretary of the department of trade and commerce is the sole receiver of insolvent state banks and district courts are without power to appoint any other person. Comp. St. 1929, sec. 8-192. Under the administrative code the governor controls the secretary of the department of trade and commerce and in the last analysis supervises and controls the liquidation of insolvent state banks, the legislature having abolished judicial liquidation and substituted therefor executive liquidation. Receiverships for insolvent state banks are

authorized and controlled by special provisions of statute to which equity power to appoint and direct receivers generally does not apply. Luikart is the receiver designated by law and the judicial attempt to appoint Torgeson was unlawful and void. The order appointing Torgeson is contrary to contemporaneous judicial and executive construction of the present statutes relating to the liquidation of insolvent state banks.

The foregoing propositions were presented at the bar and argued at length in briefs containing excerpts from both statutes and judicial opinions. The solution of the problems thus presented depends principally upon the proper answer to this question: Is the liquidation of insolvent state banks an executive, as distinguished from a judicial, function?

The statutes nowhere provide for the liquidation of insolvent state banks without invoking the judicial power of the state government. The legislature never granted to any executive officer, administrative board, department or tribunal authority to wind up the affairs of an insolvent state bank without the aid of a court. The law is that the secretary of the department of trade and commerce shall report insolvency of a state bank to the attorney general who shall apply to the district court for a decree determining such insolvency and for the appointment of a receiver. Comp. St. 1929, sec. 8-190. The statute requires notice, a hearing and a finding upon evidence in the proceeding for a judicial determination of insolvency. Comp. St. 1929, sec. 8-190. When liquidation is judicially ordered the decree shall place the bank assets in the hands of the secretary of the department of trade and commerce "and liquidation shall thereafter be had under order of court in the manner provided by law." Comp. St. 1929, sec. 8-193. The secretary of the department of trade and commerce conducts the liquidation, but he is required to do so in court. Comp. St. 1929, sec. 8-193. Legislation on this subject makes liquidation a judicial proceeding rather than an exclusive executive function. No doubt the legislature has power to create an executive or administrative

board with power to liquidate the affairs of insolvent state banks independently of the judiciary, but legislation of that kind has not been enacted in Nebraska. Acts so providing have been passed in other states and cases cited by Luikart are more applicable thereto than to the statutes now under consideration.

Both before and after the banking laws were changed in 1929 the executive department, through the attorney general, uniformly applied to the district courts for decrees determining the insolvency of state banks and for the appointing of receivers. This has been the universal practice. The applications have been made to and the proceedings conducted in courts of equity. In the exercise of equity jurisdiction district courts have rendered decrees determining insolvency; appointing receivers and directing them to take possession of bank assets; ordering the bringing of suits for the collection of debts; construing and enforcing contracts; settling controversies between receivers and claimants; passing on reports; ordering distribution of dividends to depositors and other creditors; restoring converted trust funds to beneficiaries; requiring litigation to enforce liability of stockholders; making all other orders essential to liquidation; closing receiverships. These are well-understood proceedings in equity and are inconsistent with executive liquidation. The lawmakers themselves provided for judicial liquidation. The statutes will admit of no other interpretation.

In the present proceeding the state on the relation of the attorney general invoked by petition the power of the district court for a determination of the charge that the State Bank of Minatare was insolvent and was jeopardizing the interests of its depositors. There was a prayer for the appointment of a receiver to take charge of its assets and wind up its affairs. Upon notice, hearing and evidence a judgment conforming to the prayer of the petition was entered. This was a final decree in the sense that it was appealable. Comp. St. 1929, sec. 20-1090; *McCord, Brady & Co. v. Weil,* 33 Neb. 868. By it Clarence G. Bliss, secretary of the department of trade and com-

merce, became receiver. He acted in that capacity under judicial orders from May 31, 1929, until November 2, 1931. Between those dates Bliss was the qualified officer through whom the department of trade and commerce functioned and he was also receiver, a judicial officer performing his duties as such under orders of the court. In the meantime the governor removed Bliss as secretary of the department of trade and commerce and in his place, July 8, 1931, appointed E. H. Luikart who qualified and entered upon his executive duties. Counsel for Luikart insist that consequently the district court was required to appoint him receiver of the State Bank of Minatare under the following enactment of the legislature:

"The secretary of the department of trade and commerce shall be the sole and only receiver of failed or insolvent banks, and shall serve as such without compensation other than his compensation as secretary of said department." Comp. St. 1929, sec. 8-192.

Is this a mandatory statute requiring the judicial department of government to appoint the secretary of the department of trade and commerce "the sole and only receiver" in literal compliance with the statutory provisions quoted, as argued on appeal herein? If so the executive appointment and the act of the legislature require modification of the judgment of the court of equity in the pending proceeding, without regard to the exercise of judicial power, by substituting one receiver and officer of a court for another. Is the person appointed by the court as receiver to liquidate an insolvent state bank removed whenever the governor retires the secretary of the department of trade and commerce? If such a secretary refuses to act or becomes disqualified or makes default, is judicial action in a pending receivership suspended until the governor makes a new appointment? In the event of such contingencies is the court without power to remove a receiver and appoint another? These questions answer themselves in the negative. In a pending cause the chief executive and the legislature cannot change or modify judicial orders or lawfully require the court to do so. A

judicial order in pending litigation does not change with political fortunes or legislative acts or executive appointments. In a cause properly before a court of equity for determination the appointment of a necessary receiver is a judicial function. *State v. Farmers & Merchants Ins. Co.*, 90 Neb. 664. This appointing power came from the Constitution—a higher source than an act of the legislature. Const. art. V, sec. 9; *Matteson v. Creighton University*, 105 Neb. 219; *Burnham v. Bennison*, 121 Neb. 291; *State v. Farmers State Bank*, 121 Neb. 532; *State v. State Bank of Touhy*, 122 Neb. 582. On high authority it was recently held that the legislature cannot compel a court to admit to the bar a person deemed by the judiciary to be unfit to exercise the prerogatives of an attorney at law, a court officer. *State v. Cannon*, 240 N. W. (Wis.) 441. In an opinion relating to the appointment of supreme court commissioners the supreme court of Nebraska in a unanimous opinion said:

"Neither the legislature nor the governor has the right to dictate whom the court shall appoint as its referees or assistants. The court might as well assume to appoint the chief clerk or sergeant-at-arms of each house of the legislature." *In re Supreme Court Commissioners*, 100 Neb. 426.

French legislators once imprisoned judges for failure to comply with the legislative will. Montesquieu suggested a government with legislative, executive and judicial departments, each independent of the other. The framers of the American Constitution and the people of Nebraska adopted that plan. It has been regarded by statesmen and philosophers as an outstanding advancement in the science of government. Throughout the judicial history of the present system the courts have scrupulously respected the prerogatives of the legislative and executive departments and extended to them the comity due to governmental divisions of equal rank, but courtesy does not extend to the surrendering of judicial power. It is an imperative duty of the judicial department of government to protect its jurisdiction at the boundaries of power fixed by the Constitution.

Legislation that "The secretary of the department of trade and commerce shall be the sole and only receiver of failed or insolvent banks" amounts to no more in a judicial proceeding in a court of equity than a legislative recommendation to the judiciary to appoint him in the interests of economy and business management. Otherwise the enactment would be an unconstitutional encroachment on a judicial prerogative.

The district court gave reasons for appointing Torgeson instead of Luikart. After finding that Bliss had faithfully performed his duties as receiver of the State Bank of Minatare and had accounted for all the assets thereof, the district court made the following findings as shown by the judicial record:

"The court further finds that A. E. Torgeson is now the assistant to the receiver in charge of the liquidation of said bank and is familiar with the condition of all the assets and work in connection with the liquidation of said trust and is a proper and fit person to be appointed receiver of the State Bank of Minatare; that he is now in possession of said assets and has receipted in court for the same."

There is nothing in the record to show that this finding and the resulting appointment of Torgeson were erroneous or illegal or inequitable or unjust or inimical to the best interests of the depositors and other creditors. The trial court acted within its powers on sufficient evidence. No reason for a reversal has been pointed out or found.

AFFIRMED.

PAINE, J., dissenting.

I cannot agree with the majority opinion in this case. To go back to the old custom of each district judge appointing independent receivers in each county for failed banks will, in my opinion, defeat the whole plan worked out so carefully by the legislature.

From the first, our guaranty plan has been approved by the United States supreme court. In deciding the case of *Noble State Bank v. Haskell*, 219 U. S. 104, 55 L. Ed. 112, and its companion case of *Shallenberger v. First State*

*Bank,* 219 U. S. 114, Justice Holmes said: "If then the legislature of the state thinks that the public welfare requires the measure under consideration, analogy and principle are in favor of the power to enact it"—and decided that the guaranty fund law was well within the state's constitutional power.

That banking is a quasi public business, which the state, in the exercise of its police power, may take under its control to the extent of prohibiting the business of banking entirely except upon such conditions as it may prescribe, was held in effect in *Noble State Bank v. Haskell, supra,* and again approved by Chief Justice Hughes in *Abie State Bank v. Bryan,* 282 U. S. 765, 75 L. Ed. 690.

In Iowa, by section 9242 of the 1927 Code, it was provided that "the superintendent of banking henceforth shall be the sole and only receiver or liquidating officer for state incorporated banks and trust companies." It was held by the Iowa Code that "henceforth" meant the same as "hereafter," and that this section did not thereby oust those receivers who had been legally appointed and acting prior to the passage of the law.

In the case of *State v. First State Bank,* 52 N. Dak. 231, in holding the laws relating to the liquidation of insolvent banks to be constitutional, it was held in the first paragraph of the syllabus: "Under the Constitution of this state all governmental power is vested in the legislature except such as is granted to the other departments of government, or expressly withheld from the legislature by constitutional restrictions." And in the text thereunder, it states: "It is well settled that the legislature is vested with constitutional authority to regulate the business of banking; and * * * clearly had power to say when and under what conditions banking corporations should be deemed insolvent and subject to liquidation; and also had power to prescribe any mode or manner for the liquidation of such insolvent banking corporations, not expressly forbidden by the Constitution."

The great number of failures of state banks threatened the very existence of the remaining banks, and the legis-

lature in 1929 decided upon a more efficient administration of the affairs of the closed banks, cutting down expenses in every possible way, to the end that the depositors might receive a greater percentage upon their deposits than under the old plan. Among the sections of the new law to carry this out was one designed to cut out receiver's fees, and place all of them under one responsible head, so in section 8-192, Comp. St. 1929, it provides: "The secretary of the department of trade and commerce shall be the sole and only receiver of failed or insolvent banks, and shall serve as such without compensation other than his compensation as secretary of said department."

It is claimed that, when Mr. Bliss was succeeded in office of the department of trade and commerce, there were in the neighborhood of 190 receiverships pending, and that similar applications were made and the same constitutional objections advanced, supported by the same authorities now cited to this court, in every district court in the state in which these receiverships were pending, and that in each of these cases the district judges, after listening to these arguments, have appointed E. H. Luikart, the secretary of the department of trade and commerce, as receiver of the liquidated banks in their districts, as clearly provided in this law, with the single exception of the cases now pending before us. It occurs to the writer of this dissent that, if the same question has been presented to many of the judges of the district courts, and the same arguments advanced, and they have each decided that the liquidation of banks was an executive function, to be exercised under the direction of the governor by the secretary of the department of trade and commerce, such rulings of district judges cannot be entirely overlooked.

In *Leach v. Exchange State Bank*, 203 N. W. 31 (200 Ia. 185) it was held: "The propriety of enlarging the power of superintendent of banking, under Acts 40th Gen. Assem. c. 189, which amended Code 1897, sec. 1877, to include liquidation and distribution of assets of an insolvent bank, *without his being appointed receiver*, is matter for legislative rather than judicial concern."

In *In re Citizens Exchange Bank,* 140 S. Car. 471, it was held: "In proceeding to liquidate bank by directors, judge on application for appointment of receiver must act under laws as to receivers." And in the same case it was held that, while the power of the court of equity to appoint receivers in numerous instances has been upheld by this court, it has also been repeatedly decided that this great power should be exercised with caution.

In times past the liquidation of insolvent banks was handled by the district court in the county where the bank was located, but when banks were failing by the hundreds, the legislature, because of the controlling importance of the situation, decided to place the administration of failed banks in the power of the executive, and yet, in so doing, used the office of the clerk of the district court in each county as the place where duplicate copies of the orders made could be found by any interested depositor, and to give the procedure the stamp of local authority, provided that the district court should name the secretary of the department of trade and commerce as receiver of all failed banks. This plan has brought order out of chaos, and tends for a speedy and economical administration of insolvent banks.

The writer of this dissent believes that the legislature has entire power to dictate under what conditions the banks may be allowed to do business and under what conditions they shall be liquidated, and in passing an act placing this in charge of the executive branch of the government, it in no way reflects upon the judiciary of the state in not being allowed to exercise the judgment of each individual district judge in appointing a local receiver of his own choice. There is abundant authority for approving the course taken by the legislature in the enactment of this law. The old plan of individual receiverships under individual district judges having been tried and found wanting, the new plan promises a great improvement, and should not, in these times of distress, be hampered by any undue jealousy on the part of the judiciary for fear its rights may be infringed upon.

This court has held in *State v. Exchange Bank,* 114 Neb. 664: "The department of trade and commerce is vested with general supervision and control of state banks with authority to do all things reasonably necessary for the protection of depositors therein throughout the state. It also stands in the nature of a trustee for the state bank guaranty fund, and it is its duty as such to take such precautions as may be reasonably necessary to conserve and protect this fund."

It may be admitted that a receiver, in the ordinary use of that term, is an officer of the court, and that his duties and powers are entirely limited by the court which appoints him, but does not the secretary of the department of trade and commerce have powers, duties, rights and obligations given him by the legislature, to be exercised by him subject only to the approval of the governor of the state, by whom he is appointed? Is he not much more than a receiver? See *American Southern Nat. Bank v. Smith,* 170 Ky. 512, Ann. Cas. 1918B, 959. In this connection we find that in Tennessee a receiver of a railroad may be appointed by the governor under the internal improvement act. *Newman v. Davenport,* 9 Baxt. (Tenn.) 538.

Doubtless our legislature had in mind the secretary of the department of trade and commerce as a "receiver" who should not be under the control of the district court, the same as receivers of national banks, who are appointed by the comptroller of the currency, and not in any sense officers of any court, but simply the agents and officers of the United States government. *In re Chetwood,* 165 U. S. 443; *United States v. Weitzel,* 246 U. S. 533. And was it not the intention of the legislature, in providing that the secretary of the department of trade and commerce should be the sole and only receiver, to make him thereby the liquidating agent of every insolvent bank? This provision for his appointment as receiver of each bank by the district judge is simply one of those instances of overlapping power which may arise in the twilight zone between the legislative, the judicial, and the executive de-

partments of our government. Justice Holmes once said: "Delusive exactness is a source of fallacy throughout the law." In this instance, should not the judiciary cheerfully cooperate in this appointment, clearly the will of the legislature, to the great end that the depositors may receive the largest possible sum from a prompt, vigorous, and efficient liquidation of banks by one responsible person, to wit, the secretary of the department of trade and commerce?