STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V.
NEBRASKA STATE BANK ET AL., APPELLANTS:    E. H.
LUIKART, RECEIVER, APPELLEE.

FILED FEBRUARY 24, 1933.   No. 28606.

W. D. Funk and W. A. Meserve, for appellants.

F. C. Radke and Barlow Nye, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

This is an appeal from an order of the district court for Knox county authorizing the receiver of the Nebraska State Bank of Bloomfield, Nebraska, to borrow money from the Reconstruction Finance Corporation, and for that purpose pledge assets of said bank in the manner and to the extent required by the terms of an act entitled "An Act to provide emergency financing facilities for financial institutions, to aid in financing agriculture, commerce, and industry, and other purposes," adopted by the congress of the United States on January 22, 1932. Reconstruction Finance Corporation Act of January 22, 1932, 47 U. S. St. at Large, ch. 8, p. 5.

The fifth section of this act provides, in part, as follows:

"To aid in financing agriculture, commerce, and industry, * * * the corporation is authorized and empowered to make loans, upon such terms and conditions not inconsistent with this act as it may determine, to any bank,

\* \* \* organized under the laws of any state or of the United States, including loans secured by the assets of any bank that is closed, or in process of liquidation to aid in the reorganization or liquidation of such banks, upon application of the receiver or liquidating agent of such bank and any receiver of any national bank is hereby authorized to contract for such loans and to pledge any assets of the bank for securing the same: Provided, that not more than $200,000,000 shall be used for the relief of banks that are closed or in the process of liquidation.

"All loans made under the foregoing provisions shall be fully and adequately secured. The corporation, under such conditions as it shall prescribe, may take over or provide for the administration and liquidation of any collateral accepted by it as security for such loans. Such loans may be made directly upon promissory notes or by way of discount or rediscount of obligations tendered for the purpose, or otherwise in such form and in such amount and at such interest or discount rates as the corporation may approve. \* \* \*

"Each such loan may be made for a period not exceeding three years, and the corporation may from time to time extend the time of payment of any such loan, through renewal, substitution of new obligations, or otherwise, but the time for such payment shall not be extended beyond five years from the date upon which such loan was made originally."

It appears that the proceedings in the district court were had in a case entitled: State of Nebraska, ex rel. C. A. Sorensen, Attorney General, v. Nebraska State Bank, Bloomfield, Nebraska. In this proceeding there had been an adjudication of insolvency of the Bloomfield State Bank, and the appointment of E. H. Luikart as receiver therefor for the purpose of liquidation thereof had been made. In this cause E. H. Luikart, as receiver, on April 30, 1932, made application for an order authorizing him to borrow money from the Reconstruction Finance Cor-

poration and pledge the assets of this insolvent bank therefor. The sufficiency of this application, as it now appears, is conceded. On May 3, 1932, the court entered an order fixing time and place of hearing of said application, and pursuant to this order notice thereof was duly given by publication and later approved by the district court. Thereafter the Nebraska State Bank, and ten others who were either directors of, stockholders in, depositor creditors, or general creditors of, this bank filed objections. A hearing thereon was had and evidence was introduced, in consideration of which the district court granted the application, from which order the objectors appeal.

The objectors do not now question the truth and sufficiency of facts to sustain the order appealed from, but rely solely on the alleged lack of power of the district court to authorize the proposed loan. It may be said that undisputed evidence in the record fairly establishes that this insolvent institution is located in an agricultural community in northeast Nebraska, and in addition the surrounding farm lands are rich and under ordinary conditions productive; that unusual conditions of the past two years, due to drouth, the presence of the grasshopper plague, current and prevailing prices for farm products, have made it impossible for the farmers and merchants residing in this town and vicinity to meet their financial obligations, and this is also true with special reference to the obligations which make up the assets of this institution; that farm lands in this vicinity are at present practically unsalable; that these conditions extend over eight counties adjoining Knox county, in which this insolvent institution is situated; that it would be to the best interests of the depositors, creditors and stockholders of said bank, and the community of Bloomfield in general, to defer the liquidation of the assets of said bank by extending time to its debtors and retaining the assets until new crops can be produced out of which such indebtedness may be paid; that this course would not only

aid the receiver in the gradual liquidation of the insolvent bank, but would enable him to conserve its assets, and also secure for the bank's depositors the early return of the largest possible portion of their deposited funds, and thus assist and enable them to continue to carry on their usual and ordinary vocations of stock raising, stock feeding, and agriculture; that, therefore, the best interests of all concerned would be promoted by the requested authorization of the receiver to contract with the Reconstruction Finance Corporation for a loan of $50,000. Attached to this application are the forms of the proposed contract and a list of the assets proposed to be pledged.

On argument at the bar of this court, it was conceded that the best interests of the bank, its stockholders, its creditors, as well as the community in which it was situated, would be promoted by the authorization of the loan. However, on behalf of the objectors it was insisted: (1) That the trial court was wholly without power to authorize the receiver of a state bank to borrow money and pledge the assets of the insolvent institution therefor; (2) that under the terms of the Nebraska statutes (Comp. St. 1929, sec. 8-1,102) "the claims of depositors, for deposits, not otherwise secured, and claims of holders of exchange, shall have priority over all other claims, except federal, state, county and municipal taxes, and subject to such taxes, shall at the time of the closing of a bank be a first lien on all the assets of the banking corporation," and that this statutory lien foreclosed the right of a court of equity, even though possessed of inherent power in a proper case, to direct a disposition of the assets of an insolvent bank in contravention thereof.

In the instant case we are dealing with a receiver judicially appointed. The appointing power came from the Constitution. Const. art. V, sec. 9. "Under the state Constitution, district courts have equity jurisdiction, and it may be exercised without legislative enactment." *Matteson v. Creighton University,* 105 Neb. 219. See *State v. State Bank of Minatare,* 123 Neb. 109.

This court is committed to the view that not only is equity jurisdiction conferred by the terms of the Constitution, but that, as thus conferred, it is beyond the power of the legislature to limit or control; that while the legislature may grant to the district courts such other jurisdiction as it may deem proper, it cannot limit or take from such courts their broad and general jurisdiction which the Constitution has conferred upon them. *Lacey v. Zeigler,* 98 Neb. 380; *State v. State Bank of Minatare,* 123 Neb. 109; *Burnham v. Bennison,* 121 Neb. 291.

One of the well-recognized grounds of equity jurisdiction thus conferred on, and available in, courts in this state, by virtue of this constitutional provision, is supervision of the administration of trusts. *Matteson v. Creighton University,* 105 Neb. 219; *Burnham v. Bennison,* 121 Neb. 291.

"The property and assets of a banking corporation organized under the laws of this state, after it has ceased carrying on a banking business, are a trust fund for the payment of its debts." *State v. Commercial State Bank,* 28 Neb. 677.

"Courts of equity have original power to appoint receivers and to make such orders and decrees with respect to the discharge of their trust as justice and equity may require." *Blades v. Hood,* 203 N. Car. 56.

In addition to the specific grant of equity jurisdiction, section 9, art. V of the Constitution, provides that district courts shall have "such other jurisdiction as the legislature may provide." As will be seen, the legislature of this state has enacted certain provisions relative to procedure in cases of insolvent state banks which are to be read and interpreted in the light of the constitutional provision referred to. It includes a judicial determination of the fact of insolvency (Comp. St. 1929, sec. 8-190), the appointment of a receiver (Comp. St. 1929, sec. 8-192), and further provides: "When, by a decree of court, a bank is ordered liquidated, the decree shall place the

assets of said bank in the hands of the * * * (appoint-ed receiver), *and liquidation shall thereafter be had under order of court in the manner provided by law."* Comp. St. 1929, sec. 8-193. (Italics ours) The terms of our state bank act contain no specific denial of the right of a receiver to pledge the assets of his trust, unless the provisions already quoted relative to holders of exchange and depositors' first lien may be so construed. Pertinent statutory provisions which section 8-193, Comp. St. 1929, thus above quoted incorporates by reference include the following: Section 20-1081, Comp. St. 1929, provides: "A receiver may be appointed by the * * * district court, or by the judge (thereof) * * * in the following cases: * * * In all cases provided for by special statutes; Fifth. In all other cases where receivers have heretofore been appointed by the usage of courts of equity." Section 20-1087, Comp. St. 1929, provides: "Every order appointing a receiver shall contain special directions in respect to his powers and duties, and upon application of any party to the suit, after due notice thereof, such further direc-tions may be made in that behalf by the court or judge as may in the further progress of the cause become proper." While the legislature has refrained from pre-scribing any express limitation on the powers of the district courts in dealing with the assets of the trust, it may be said that, by implication, it fairly appears that, though not expressed in specific words of grant, the exer-cise of such powers for the following purposes was con-templated, viz., (1) for "preserving and protecting prop-erty pending litigation," (2) for "continuing the business of the debtor or corporation pending litigation, or when financially embarrassed," (3) for "winding up the affairs of a debtor or corporation, reducing the assets to cash and distributing them." Comp. St. 1929, sec. 20-1092. Also, section 20-1090, Comp St. 1929, provides in part: "All orders appointing receivers, giving them further direc-tions and disposing of the property, may be appealed to the supreme court in the same manner as final orders

and decrees." In the construction of the provisions last quoted, this court is committed to the doctrine: "An order of the court giving directions or instructions to a receiver in the performance of his trust will not be disturbed on review where no abuse of discretion is shown." *State v. Bank of Rushville,* 57 Neb. 608. See, also, *State v. Nebraska Savings & Exchange Bank,* 61 Neb. 496.

In this connection it is to be remembered: "The boast of those who have administered equity jurisprudence, that its remedies may be so employed as to give complete relief to each complainant, would be palpably vainglorious, had they not devised modes of enforcing their decrees, sufficiently stringent to compel obedience and sufficiently varied to answer every conceivable emergency." Freeman, Executions (2d ed.) sec. 8a. Approved in *Sanford v. Anderson,* 69 Neb. 249. See, also, *Matteson v. Creighton University,* 105 Neb. 219.

The subject of this action is the assets of an insolvent state bank in the course of litigation. *Munn v. Illinois,* 94 U. S. 113, *Budd v. New York,* 143 U. S. 517, *Brass v. North Dakota,* 153 U. S. 391, *German Alliance Ins. Co. v. Lewis,* 233 U. S. 389, and *Noble State Bank v. Haskell,* 219 U. S. 104, demonstrate that a business by circumstances, and its nature, may rise from private business to public concern and consequently become subject to public obligations and governmental regulations, as affected with a public interest. Section 8-114, Comp. St. 1929, is a statutory recognition of the fact that this principle is applicable to the business of state banks. It provides: "The business of banking, or the receiving of deposits of money or instruments of credit subject to be repaid upon check, draft, certificate, passbook or order; the discounting, negotiating of promissory notes, drafts, bills of exchange, and other evidences of debts; and the loaning of money upon personal or other security is hereby declared to be a quasi-public business and subject to regulation and control by the state."

Early in our jurisprudence it was determined that the business of banking involved more than the creation of a private debtor and creditor, and embraced the establishment of a public instrument for the discharge of public duties in carrying out a public purpose for the promotion of public good. *McCulloch v. State of Maryland*, 4 Wheat. (U. S.) 316. Even the primary function of a bank of deposit was judicially recognized as being more than a mere creation of a private obligation.

"The receipt of money by a bank where the depositor can withdraw it when and in such sums as he pleases, although creating a debt, is, in a popular sense, the receipt of money for safe-keeping." *Engel v. O'Malley*, 219 U. S. 128.

While intervening insolvency of a bank may terminate its ability to respond to its public and private obligations, it necessarily imposes upon the court administering such corporate assets the imperative duty of so conducting its affairs as to minimize the losses occasioned to the public as well as the private creditors, keeping always in view the course of business contemplated by the parties at the time the engagements defaulted were entered upon. It must be conceded that the money "held for safe-keeping" should be paid at the earliest possible moment, and the prosperity of the local community which the insolvent bank served is seriously affected by any failure in so doing. This is the end sought to be accomplished and the evil sought to be avoided by an equitable receivership. In the absence of express limitations on the powers of the controlling tribunal, methods should be adopted by it to secure the result desired, for both public and private interests are necessarily involved.

It may be true that in the instant case an emergency has arisen, not in the contemplation of the legislature when our banking laws were framed. Nevertheless, as an emergency it is properly the subject of equity jurisdiction. The controlling questions have their origin in an effort of the federal congress to aid closed banks in

the time of financial stringency. Recourse to this aid, in the light of the facts of this record, is the only source from which prompt partial relief upon terms favorable to the interest of all parties may now be secured. Waiving for the moment the question of the statutory first lien of depositors not otherwise secured, and holders of exchange, in view of the terms of our Constitution and the provisions of our statutes, and the nature of the transactions involved, we are unable to perceive any adequate reason for denying to the trial court the powers it assumed to exercise in the instant case. The right of the district court to authorize the receiver of a state bank to borrow money and to pledge assets is never absolute; its necessity must be determined by a court of equity in its administration of justice among those who have a pecuniary interest in the affairs of the bank. The trial court necessarily inquired into and judicially considered all the facts, including those relating to the conditions of the bank, the true interests of the preferred creditors thereof, and the terms imposed by the Reconstruction Finance Corporation for the proposed loan. We find in its decree, approving and authorizing the same, no abuse of its undoubted discretion. *Andrew v. First Trust & Savings Bank*, 244 N. W. (Ia.) 394; *Blades v. Hood*, 203 N. Car. 56; *Bassett v. Merchants Trust Co.*, 115 Conn. 530; *State v. Superior Court*, 169 Wash. 258.

Nor do we find that the terms of the statute creating a first lien on the assets of an insolvent state bank for certain classes of preferred creditors (Comp. St. 1929, sec. 8-1,102) in any manner limit the power of a court of equity to dispose of the property here involved or affect the conclusion stated.

Construing the provision referred to in connection with bank legislation of this state, and the established practice of this court in cases involving like questions, it evidences a legislative intent to grant "claims of depositors, for deposits, not otherwise secured, and claims of holders of

exchange," as against other creditors of the institution, a certain priority of payment out of the assets of commercial banks. Solely for the purpose of securing this statutory right, it is in effect further provided that this right of priority "shall at the time of the closing of a bank be a first lien" on the assets thereof. However, the jurisdiction of a court of equity to be exercised in the selection of the appropriate method to be followed by the receiver in managing and disposing of the property in suit to secure the benefits of the statutory right thus created to and for these preferred creditors, through a proper disposition of the assets involved, is neither in terms nor by necessary implication in any manner qualified, limited or denied. For, in the transaction here authorized, the conclusion is inescapable that, when carried out, the avails of all bank property thus disposed of will have and continue to retain the characteristics of a trust fund, as to which these statutory rights of priority of payment are fully preserved. "Where the form of trust property is legally changed, the trust follows it in its new form with equity's supervisory power of administration unchanged." *Matteson v. Creighton University*, 105 Neb. 219.

It follows that the action of the district court in authorizing and directing the receiver to secure the loan from the Reconstruction Finance Corporation in the amount and upon the terms set forth in the application before that court was unquestionably within its power, and in the instant case the discretion exercised by the trial court was justified by the facts then before it.

The order of the district court appealed from is, therefore, in all respects correct and is

AFFIRMED.