HELEN M. BOURKE ET AL., APPELLEES, V. ILENE WATTS, PERSONAL REPRESENTATIVE OF THE ESTATE OF PAUL E. WATTS, DECEASED, APPELLANT, AND BAXTER CHRYSLER-PLYMOUTH, INC., A NEBRASKA CORPORATION, APPELLEE.

391 N.W.2d 552

Filed August 1, 1986.   No. 85-079.

Michael A. Fortune of Erickson & Sederstrom, P.C., for appellant.

James T. Gleason of Swarr, May, Smith & Andersen, P.C., for appellees Bourke and Bowmans.

Stave, Coffey & Swenson, P.C., for appellee Kumpf.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.
This appeal involves four cases, all of which arose out of an automobile accident that occurred in Sarpy County, Nebraska, on March 15, 1983.

Patricia B. Bowman, the plaintiff in *Bowman v. Watts*, docket 55, page 243, was driving a 1979 Buick Regal automobile in a westerly direction on Highway 370 at the time the accident occurred.

Helen M. Bourke, the plaintiff in *Bourke v. Watts*, docket 55, page 242, was a passenger in the Bowman vehicle at the time the accident occurred.

Charles B. Bowman, the plaintiff in *Bowman v. Watts*, docket 55, page 244, is the husband of Patricia B. Bowman. His action was brought to recover damages for the destruction of the Buick automobile and the loss of consortium and the companionship of his wife.

Loretta A. Kumpf, the plaintiff in *Kumpf v. Watts*, docket 55, page 230, was a passenger in the Bowman vehicle at the time the accident occurred.

Ilene Watts, the defendant in all four cases, is the personal representative of the estate of Paul E. Watts, deceased. At the time of the accident, Paul Watts was driving his 1981 Chrysler automobile in an easterly direction on Highway 370.

At the place where the accident occurred, Highway 370 is a two-lane paved highway. It was misting at the time of the accident, but visibility otherwise was good.

The accident occurred when, at a point between 52d Street and 60th Street, the Watts automobile suddenly turned sharply to the left in front of the Bowman automobile, and the front of the Bowman automobile collided with the right side of the Watts automobile. The plaintiffs Patricia B. Bowman, Helen M. Bourke, and Loretta A. Kumpf all suffered severe injuries as a result of the accident. Paul Watts died March 29, 1983, 14 days after the accident, as a result of the injuries he sustained in the accident.

On March 23, 1984, the plaintiff Bourke was granted leave to file a first amended petition joining Baxter Chrysler-Plymouth, Inc., as an additional defendant. On August 10, 1984, the defendant Watts was granted leave to file a cross-petition against Baxter Chrysler-Plymouth, Inc.

On August 30, 1984, the trial court, on its own motion, consolidated all four cases for trial. Thereafter, the matter was

set for trial to a jury on the issue of liability only.

The trial commenced on December 10, 1984, and was submitted to the jury on December 19, 1984. On the same day, the jury returned a verdict finding that the plaintiffs had not proved by a preponderance of the evidence that Watts' negligence, if any, was a proximate cause or a proximately contributing cause of the accident and that the plaintiffs and cross-plaintiff Watts had not proved by a preponderance of the evidence that Baxter's negligence, if any, was a proximate cause or a proximately contributing cause of the accident.

Thereafter, the plaintiffs filed motions for judgment notwithstanding the verdict or for a new trial as against Watts and for a new trial as against Baxter Chrysler-Plymouth, Inc. Watts filed a motion for judgment notwithstanding the verdict or for a new trial as against Baxter Chrysler-Plymouth, Inc.

On December 28, 1984, the trial court sustained the motions of the plaintiffs for judgment notwithstanding the verdict as against Watts, set aside the verdict as to the finding in favor of Watts, and entered judgments on the issue of liability in favor of the plaintiffs as against Watts. All other motions were overruled.

The defendant Watts has appealed. There are no cross-appeals. A motion by the plaintiffs-appellees to amend their briefs to include an assignment of error and cross-appeal, filed October 7, 1985, after all briefs had been filed and the case was at issue in this court, was overruled on October 28, 1985.

Although the plaintiffs filed notices of appeal as to the defendant Baxter Chrysler-Plymouth, Inc., all of the parties have filed stipulations dismissing all appeals as to Baxter Chrysler-Plymouth, Inc., and there is no issue in this court between any of the parties and Baxter Chrysler-Plymouth, Inc.

The sole assignment of error by the defendant Watts is the granting of the judgment notwithstanding the verdict in favor of the plaintiffs.

It is undisputed that the collision occurred in the north, or westbound, lane of the highway. It is also clear that the proximate cause of the accident was the turn to the left by the Watts automobile in front of the Bowman automobile, which was approaching from the east in the westbound lane. Watts did

not allege contributory negligence on the part of any of the plaintiffs, and there is no contention that there was any negligence on the part of the plaintiffs which in any way was a contributing cause of the accident.

The plaintiffs alleged that Watts was negligent in driving on the wrong side of the road. The fact that the Watts automobile crossed the centerline and turned into the westbound lane in front of the Bowman automobile was evidence of negligence on the part of the driver, but it was not necessarily negligence as a matter of law. Watts alleged in her answer that the accident was caused by a defect in the Watts automobile, which was "unknown, unforseen [sic] and which could not have been guarded against," and that the driver, Paul Watts, "was confronted with a sudden emergency not of his own making, and the course of action chosen by Paul Watts after being presented with this sudden emergency was not negligence."

The defendant's theory as to how the accident occurred is that a defect in the right rear braking system on the Watts automobile suddenly caused the brake to be applied to the right rear wheel, which pulled the automobile to the right. Then, in an effort to correct the swerve or pull to the right, the driver turned to the left and the collision resulted.

The rear wheels on the Watts automobile were equipped with a 10-inch drum-type hydraulic brake system. When pressure was applied to the brake pedal, two shoes inside the brake drum were forced outward and against the inside of the brake drum so as to provide braking action to the wheels. Each shoe was fastened to the backing plate by a pin equipped with a holddown spring and clip or washer. After the accident a washer and spring were found loose within the drum, the head of the pin having been pulled through the washer. As a result, one shoe was no longer fastened to the backing plate.

There was evidence that the Watts automobile had been serviced by Baxter Chrysler-Plymouth, Inc., on August 9, 1982, approximately 7 months before the accident. The work order, which was received in evidence, showed only that work was performed on the rear braking system of the car in order to "free up adjuster." There was no evidence as to the specific nature of the work done. Further, there was no evidence that

either or both of the rear brake drums had been removed with a puller or pried off. There was also testimony that the brakes on the Watts automobile had not been repaired anywhere other than at Baxter Chrysler-Plymouth, Inc.

The plaintiffs produced an expert witness, Thomas Smith, a registered civil engineer, who testified that in his opinion the retaining clip or washer failed "on impact" at the time of the collision. This witness, however, had only limited experience in automobile accident reconstruction cases.

Richard Large, a licensed engineer called as an expert witness by the defendant Watts, testified that in his opinion the head of the pin had pulled through the retaining clip or washer sometime before the accident happened. This permitted the brake shoe to move outward, or cock, within the brake drum, the washer and spring then lodged between the brake shoe and the backing plate or drum and pushed the shoe outward against the drum, exerting brake pressure or creating a drag between the shoe and the drum. As a result, the car was pulled to the right.

Thomas Richard Fries, a licensed engineer called as an expert witness by the defendant Watts, testified that in his opinion the brake failure on the Watts automobile occurred prior to and at about the time of the collision. If the washer had been damaged during removal of the drum at some prior time, then the washer could fail at a later time with a "very low loading." When the brake shoe is not fastened to the backing plate and "floats," it will cause a significant drag and may cause the brake to lock up and cause the automobile to pull to the right. In his opinion the marks on the brake drum and shoes on the Watts car showed that a significant drag had occurred.

Raymond Moss, an automotive instructor at the Metropolitan Technical Community College in Omaha, Nebraska, specializing in brakes and front-end work, was called as an expert witness by the defendant Watts. This witness testified that it was his opinion, based upon his examination of the brake shoes and brake drum, that the washer and spring failed prior to impact and caused the brake to "lock up." He further testified that it has been his experience that when the washer comes loose from the pin while the automobile is being

driven, 9 times out of 10 the brakes will "lock up." In his opinion it was not possible for the retaining pin to pull through the washer at the point of impact.

The evidence which has been summarized, while not a complete summary of all of the evidence, is sufficient to demonstrate that there was a question for the jury as to whether any negligence of the driver of the Watts automobile was a proximate cause of the accident. *Kahrhoff v. Kohl*, 219 Neb. 742, 366 N.W.2d 128 (1985).

A motion for judgment notwithstanding the verdict may be sustained and a judgment entered in accordance with a previous motion for directed verdict only where at the close of all evidence a motion for a directed verdict was made, which motion should have been sustained but was overruled and the case submitted to the jury, which returned a verdict contrary to the motion. *Rose v. Reinhart*, 194 Neb. 478, 233 N.W.2d 302 (1975); *Buchanan v. Zorn*, 169 Neb. 396, 99 N.W.2d 773 (1959).

A directed verdict is proper only where reasonable minds cannot differ and can only draw but one conclusion from the evidence. *Burrows v. Jacobsen*, 209 Neb. 778, 311 N.W.2d 880 (1981). Where reasonable minds may draw different conclusions from the evidence, the question of negligence is for determination by the jury. *Cullinane v. Interstate Iron & Metal*, 216 Neb. 245, 343 N.W.2d 725 (1984). The verdict of a jury based upon conflicting evidence will not and should not be set aside unless it is clearly wrong. *Department of Banking v. Colburn*, 188 Neb. 500, 198 N.W.2d 69 (1972).

A motion for judgment notwithstanding the verdict must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have all controverted facts resolved in his favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Davidson v. Simmons*, 203 Neb. 804, 280 N.W.2d 645 (1979). This standard similarly applies to this court in determining whether a motion for judgment notwithstanding a verdict should have been or was correctly sustained. *Department of Banking v. Colburn, supra.*

The burden was on the plaintiff to show that the defendant

was negligent by act or omission. *Brahatcek v. Millard School District*, 202 Neb. 86, 273 N.W.2d 680 (1979). The plaintiffs' case in chief clearly established that Watts crossed the centerline of the highway prior to the collision. Crossing the centerline of the highway, as the Watts vehicle did, may have been a violation of Neb. Rev. Stat. § 39-620 (Reissue 1984). Violation of a statute is only evidence of negligence and does not constitute negligence per se. *Schaefer v. McCreary*, 216 Neb. 739, 345 N.W.2d 821 (1984). However, negligence is never presumed, and the mere happening of an accident does not prove negligence as a matter of law. *Burrows v. Jacobsen, supra*; *Porter v. Black*, 205 Neb. 699, 289 N.W.2d 760 (1980); *Kahrhoff v. Kohl, supra.*

Although proof that the defendant crossed the centerline was some evidence of negligence, if the accident was the result of a mechanical defect in the braking system of the Watts automobile, which was unknown and could not be foreseen, and resulted in the driver of the Watts car being faced with a sudden emergency, then the jury could find that the accident was not caused by any negligence on the part of the driver of the Watts automobile.

Generally, the operator of a motor vehicle is only liable for the defects in the vehicle of which he is aware or, in the exercise of due care, should have been aware. *In re Estate of O'Byrne*, 133 Neb. 750, 277 N.W. 74 (1938); *Scarborough v. Aeroservice, Inc.*, 155 Neb. 749, 53 N.W.2d 902 (1952); *Paxton v. Nichols*, 157 Neb. 152, 59 N.W.2d 184 (1953).

There is no contention by the plaintiffs in this case that there was a defect in the Watts vehicle which was known or should have been known by the driver. The plaintiffs contend there was no defect.

The driver of an automobile who is suddenly confronted with an emergency requiring instant decision is not necessarily guilty of negligence in pursuing a course which by mature reflection or deliberate judgment might prove to be wrong. *Swartz v. Peterson*, 199 Neb. 171, 256 N.W.2d 681 (1977). Again, there is no contention in this case that the sudden emergency claimed by Watts was brought upon himself by his own acts.

As the court stated in *Starns v. Jones*, 500 F.2d 1233, 1236-37 (8th Cir. 1974):

> Where the Sudden Emergency Doctrine is successfully invoked, it does not provide an affirmative defense for a driver whose negligence has already been established; rather it precludes the opposing party from establishing a case of negligence in the first place. . . .
>
> . . . .
>
> . . . At trial, the evidence of sudden brake failure was coupled with evidence of the limited responses available to defendant Garst . . . . This evidence of the limited options open to Garst upon his discovery of the brake failure is precisely the type of evidence that a sudden emergency instruction is designed to explain to the jury.
>
> . . . Where, as here, there was evidence that the owner of the bus had had it completely overhauled only two months before the accident, we find that the challenged instruction properly presented a factual question of the defendant's negligence to the jury. . . .
>
> . . . .
>
> "* * * The law does not require under [sudden emergency] circumstances that no mistake should be made. All it requires is that one demean himself as an ordinary, careful and prudent person would have done, under like circumstances, and if he does that, he is *not held to be negligent*, even though he committed an error in judgment."

(Emphasis in original.)

The verdict in favor of Baxter Chrysler-Plymouth, Inc., was not a finding that no mechanical failure occurred prior to the accident.

The record shows that a jury question was presented and it was error to sustain the plaintiffs' motions for judgment notwithstanding the verdict. The judgments are reversed, and the causes are remanded with directions to reinstate the verdict in each case.

REVERSED AND REMANDED WITH DIRECTIONS.