STEVEN J. ARANT, APPELLANT, V. G. H., INC., DOING BUSINESS AS SENOR MATIAS RESTAURANT AND LOUNGE, APPELLEE.

428 N.W.2d 631

Filed September 9, 1988. No. 87-094.

Ronald L. Brown, of Brown Law Offices, P.C., for appellant.

Gary L. Hoffman and Michael A. Fortune, of Erickson & Sederstrom, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The plaintiff has appealed the judgment of the district court which dismissed his petition after sustaining the defendant's demurrer. Plaintiff asks that we impose dramshop liability by judicial fiat.

Plaintiff's amended petition alleged that on March 13, 1986, he was involved in an automobile accident in which a Robert Wondra suddenly swerved his oncoming vehicle into the path of plaintiff's automobile, resulting in a collision and injuries to the plaintiff. It was further alleged that Wondra was intoxicated at the time of the collision and that the defendant, doing business as Senor Matias Restaurant and Lounge, caused and contributed to Wondra's intoxication by selling him alcohol when defendant knew or should have known that Wondra was intoxicated and would pose an unreasonable risk to other drivers and pedestrians.

This court considered the issue of dramshop liability in *Holmes v. Circo*, 196 Neb. 496, 244 N.W.2d 65 (1976). In that case, the court specifically declined to judicially create dramshop liability in Nebraska:

> [I]n the final analysis, the controlling considerations are public policy and whether the court or the Legislature should declare it. We believe that the decision should be left to the Legislature. The Legislature may hold hearings, debate the relevant policy considerations, weigh the testimony, and, in the event it determines a change in the law is necessary or desirable, it can then draft statutes which would most adequately meet the needs of the public in general, while balancing the interest of specific sectors.

*Id.* at 505, 244 N.W.2d at 70. To date, the Legislature has not adopted liability for tavern owners, nor has this court changed its position on the issue since *Holmes* was decided in 1976. See, e.g., *Strong v. K & K Investments*, 216 Neb. 370, 343 N.W.2d 912 (1984).

Plaintiff raises several important considerations and excellent policy reasons in support of dramshop liability. He further argues that for the court to impose dramshop liability would be no different from our decision to abolish governmental immunity for tort liability, which was accomplished without the intervention of the Legislature. See *Brown v. City of Omaha*, 183 Neb. 430, 160 N.W.2d 805 (1968). The same may be said for negligent entrustment, *Deck v. Sherlock*, 162 Neb. 86, 75 N.W.2d 99 (1956), and the abolishment of interspousal tort immunity, *Imig v. March*, 203

Neb. 537, 279 N.W.2d 382 (1979). However, the Legislature previously had not addressed those issues.

That is not true as to dramshop liability. A dramshop act was enacted by the Legislature in 1881 and appeared as Rev. Stat. §§ 3859 through 3863 (1913). It was repealed in 1917 and replaced with wholly new dramshop provisions. See 1917 Neb. Laws, ch. 187, § 52, p. 448. In 1935, another new act, the Nebraska Liquor Control Act, Comp. Stat. §§ 53-301 to 53-3,107 (Supp. 1935), was passed, which, among other things, repealed the provisions of the statutes relating to dramshop liability. The Legislature has not seen fit to reenact such provisions. When the Legislature has spoken, it is not up to this court to disagree with its decision on a purely policy basis.

The judgment of the district court is affirmed.

AFFIRMED.

GRANT, J., concurring.

I concur in the result reached by the majority because I believe the trial court properly sustained defendant's demurrer on the grounds the amended petition does not state a cause of action.

Plaintiff's amended petition alleges that Robert Wondra was the operator of an automobile which "suddenly swerved from the westbound traffic lanes" and struck plaintiff's car. What Wondra did is not alleged. Cf. *Bourke v. Watts*, 223 Neb. 511, 391 N.W.2d 552 (1986).

With regard to the intoxication issue, plaintiff alleges that defendant's "bartender caused and contributed to the intoxication of Wondra by selling intoxicating alcoholic beverages to Wondra" when the bartender knew or should have known that Wondra was intoxicated. Plaintiff does not allege that defendant's agent sold such beverages to Wondra and that the beverages were consumed at a time leading to the accident in question by directly causing or increasing the level of Wondra's intoxication. The sale could be of unopened containers placed unused in Wondra's car, or of sales constituting " 'pouring alcohol into [the drunken customer]. . . .' " *Nazareno v. Urie*, 638 P.2d 671, 674 (Alaska 1981).

Plaintiff recognizes this problem when he improperly sets out in his brief facts which, if alleged, might constitute a

common-law action for negligence. Without any reference to any record before us, plaintiff states, "Investigation revealed that Robert Wondra had been drinking beer and shots of tequila at the bar," and "Plaintiff alleges that the Defendant's bartender was negligent in continuing to serve an intoxicated patron . . . ." Brief for appellant at 2. No such factual allegations were set out in the petition.

Plaintiff argues that "[t]he time has come for judicial adoption of dramshop liability . . . ." Brief for appellant at 8. Plaintiff appears to want this court to readopt the provisions of Comp. Stat. § 53-147 (1929). I do not think that is our function. Viewed strictly as a petition in law, plaintiff's petition does not set out facts, as distinguished from conclusions, which, in my opinion, state a cause of action, unless one wants to apply the strictest theories of absolute liability to the question before us.

SHANAHAN, J., dissenting.

The majority quite obviously feels that legislative policy and some prior decisions of this court dispose of Arant's appeal. Actually, the inescapable conclusion embodied in today's disposition is this court's indecision in failing to carry out a judicial duty toward the common law under the Nebraska Constitution.

Before addressing the constitutional considerations contained implicitly in the majority's rejection of dramshop liability, one must first analyze the majority's thesis: "When the Legislature has spoken, it is not up to this court to disagree with its decision on a purely policy basis." As a paraphrase, the Legislature has spoken; therefore, this court must be silent. The majority's premise is predicated on the repeal of the dramshop act in 1935, when the Legislature enacted the Nebraska Liquor Control Act. Thus, the majority of this court posits that the Legislature has voiced disapproval of dramshop liability based on common-law negligence. The nature of the particular dramshop act, Comp. Stat. § 53-147 (1929), supplies an interesting insight into the consequence of the 1935 repeal of the act:

> Any person who may be or shall be injured in any manner, whether in his person, property, means of support, health, loss of companionship, care or attention,

or in any other manner whatever, by reason of the sale or traffic in intoxicating liquors or by reason of his own or another's intoxication, or by reason of any illegal use of intoxicating liquor which directly or indirectly causes or contributes to such injury, shall have a right of action against any persons, association or corporation who by himself, his agent or servant illegally sold, supplied or in any way furnished the intoxicating liquor that caused or contributed to such injury, for all damages sustained. . . .

§ 53-147.

Nebraska's dramshop act, reflected in § 53-147 above, statutorily imposed liability irrespective of fault, such as negligence. In 1935, without any qualifying language or other explanation for the repealing statute, the Legislature repealed the dramshop act. As this court noted in *Holmes v. Circo*, 196 Neb. 496, 244 N.W.2d 65 (1976), the 1935 repeal of the dramshop act eliminated statutory strict liability for injury proximately caused by selling liquor to an intoxicated person. Consequently, in 1935 strict dramshop liability, in the form of a statutory dinosaur, became legislatively extinct. However, as this court views the scene today, anything that looks like dramshop liability and walks like dramshop liability is a dinosaur, extinct since 1935. From the premise that the Legislature has abolished strict liability which had existed under a dramshop act, the majority infers that the Legislature has precluded dramshop liability based on common-law negligence. If there is a distinction between strict liability and negligence, the majority's conclusion is an absolute legal non sequitur. The Legislature's abolition of the dramshop act, as a part of dramshop liability, does not constitute legislative denunciation of all dramshop liability, which includes liability based on common-law principles pertaining to negligence. Hence, the Legislature has not "spoken" on the question of dramshop liability for negligence. It appears, however, that the distinction between statutory strict liability and common-law liability for negligence may no longer exist in Nebraska.

On the other hand, if statutory strict liability under a dramshop act is distinguishable from liability based on common-law negligence, there is ample Nebraska precedent to

impose liability in Arant's case. As a preface to such precedent, we must bear in mind:

> For actionable negligence there must be a defendant's legal duty to protect the plaintiff from injury, a failure to discharge that duty, and damage resulting from such undischarged duty. (Citations omitted.) " '[D]uty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. . . .

> "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Prosser and Keeton on the Law of Torts, *Limited Duty* § 53 at 356 (5th ed. 1984).

> Foreseeability is a factor in establishing a defendant's duty, or, as expressed by Justice Cardozo in *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 394, 111 N.E. 1050, 1054 (1916): "[F]oresight of the consequences involves the creation of a duty . . . ." See, also, *Lock v. Packard Flying Service, Inc.*, 185 Neb. 71, 73, 173 N.W.2d 516, 518 (1970): " 'Foresight, not retrospect, is the standard of diligence. . . .' " (Citing and quoting from *Kolar v. Divis*, 179 Neb. 756, 140 N.W.2d 658 (1966).)

*Holden v. Urban*, 224 Neb. 472, 474-75, 398 N.W.2d 699, 701 (1987).

Turning to Nebraska precedential authority as a foundation for dramshop liability based on common law, one finds *Deck v. Sherlock*, 162 Neb. 86, 75 N.W.2d 99 (1956), in which this court recognized the common-law liability of a motor vehicle owner who entrusted his vehicle to an intoxicated person, or one likely to become intoxicated during use of the entrusted vehicle, when a third person was injured by the intoxicated person's operation of the vehicle. The *Deck* court expressed its reason for imposing liability on the negligent owner of the vehicle:

> The law requires that an owner use care in allowing others to assume control over and operate his automobile, and holds him liable if he entrusts it to, and permits it to be

operated by, a person whom he knows or should know to be an inexperienced, incompetent, or reckless driver, to be intoxicated or addicted to intoxication, or otherwise incapable of properly operating an automobile without endangering others. [Citation omitted.] A motor vehicle is not an inherently dangerous instrumentality and the owner is not generally liable for its negligent use by another to whom it is entrusted to be used. Liability may arise, however, if the owner permits operation of his motor vehicle by one whom he knows or should have known to be so incompetent, inexperienced, or reckless as to render the vehicle a dangerous instrumentality when operated by such person. In order to establish such a liability on the part of an owner it must be shown that he had knowledge of the driver's incompetency, inexperience, or recklessness as an operator of a motor vehicle, or that in the exercise of ordinary care he should have known thereof from facts and circumstances with which he was acquainted.

*Id.* at 90-91, 75 N.W.2d at 102. Cf. *Wagner v. Mines*, 203 Neb. 143, 146-47, 277 N.W.2d 672, 674 (1979): "The act of allowing a person to operate a vehicle, knowing the driver to be inexperienced or incompetent, is negligence."

The common-law principles expressed in *Holden* and *Deck* have been transposed and applied to determine duty and liability in dramshop cases maintained on the theory of common-law negligence.

When alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person, the unreasonable risk of harm . . . to members of the traveling public may readily be recognized and foreseen; this is particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent.

*Rappaport v. Nichols*, 31 N.J. 188, 202, 156 A.2d 1, 8 (1959).

As observed in *Nazareno v. Urie*, 638 P.2d 671, 674 (Alaska 1981):

[I]t is clear that the vendor is under a duty not to sell liquor where the sale creates a risk of harm to the customer or to

others. [Citation omitted.] This conclusion flows from general principles of negligence law; every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others. In selling liquor to an intoxicated customer, where it is evident that the customer may injure himself or others as a result of the intoxication, a vendor is not acting as a reasonable person would. "The first prime requisite . . . is to stop pouring alcohol into [the drunken customer]. This is a duty which everyone owes to society and to law entirely apart from any statute." *Jardine v. Upper Darby Lodge No. 1973, Inc.*, 413 Pa. 626, 198 A.2d 550, 553 (1964). We therefore hold that there is a general common law duty, independent of statute, requiring vendors to conduct themselves with reasonable care and prudence when dispensing alcohol.

A continually growing number of courts in other jurisdictions have adopted a dramshop doctrine as a matter of common-law negligence, namely, a commercial supplier of liquor, such as a tavern owner or other licensed seller of liquor, may be liable for injury caused by the sale of liquor to an intoxicated patron, when the licensee should have known that such conduct created an unreasonable risk of harm to others. See, *Mitchell v. Ketner*, 54 Tenn. App. 656, 393 S.W.2d 755 (1964); *Ramsey v. Anctil*, 106 N.H. 375, 211 A.2d 900 (1965); *Elder v. Fisher*, 247 Ind. 598, 217 N.E.2d 847 (1966); *Pike v. George*, 434 S.W.2d 626 (Ky. 1968); *Adamian v. Three Sons, Inc.*, 353 Mass. 498, 233 N.E.2d 18 (1968); *Majors v. Brodhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965); *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980); *Lopez v. Maez*, 98 N.M. 625, 651 P.2d 1269 (1982); *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983); *Buchanan v. Merger Enterprises, Inc.*, 463 So. 2d 121 (Ala. 1984); *Largo Corp. v. Crespin*, 727 P.2d 1098 (Colo. 1986); *Rong Yao Zhou v. Jennifer Mall Rest.*, 534 A.2d 1268 (D.C. 1987). See, also, Prosser and Keeton on the Law of Torts, *Limited Duty* § 53 (5th ed. 1984 & Supp. 1988).

Notwithstanding Nebraska precedent, logically extended to provide a common-law remedy for Arant, this court's disposition of the present appeal, that is, deferral for a possible statutory remedy, is an error of constitutional dimension.

Under Neb. Const. art. V, § 9, a district court is granted "chancery and common law jurisdiction." This court has adamantly defended subject matter jurisdiction constitutionally conferred on the courts, especially the district courts; for example, the Legislature " 'cannot limit or take from [the] courts their broad and general jurisdiction which the Constitution has conferred . . . .' " *State, ex rel. Wright, v. Barney*, 133 Neb. 676, 680-81, 276 N.W. 676, 680 (1937), quoting from *State, ex rel. Sorensen, v. Nebraska State Bank*, 124 Neb. 449, 247 N.W. 31 (1933). See, also, *State, ex rel. Sorensen, v. State Bank of Minatare*, 123 Neb. 109, 114, 242 N.W. 278, 281 (1932): "It is an imperative duty of the judicial department of government to protect its jurisdiction at the boundaries of power fixed by the Constitution." Recently, relying on Neb. Const. art. V, § 9, we righteously retrieved from the Legislature's domain those matters pertinent to enforcement of district court orders for child support, when the Legislature made enforcement of such child support orders a function of a referee operating independent of the district court. See *Drennen v. Drennen, ante* p. 204, 426 N.W.2d 252 (1988). Yet, without the least concern, we now abandon to the Legislature the judicial power to provide a remedy for common-law negligence, although Neb. Const. art. II, § 1, states: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." Nowhere does the Nebraska Constitution authorize transfer of judicial power to the Legislature.

Neb. Const. art. I, § 13, provides and expressly requires: "All courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay."

The majority of this court marches in lockstep with the court in *Holmes v. Circo*, 196 Neb. 496, 244 N.W.2d 65 (1976), namely, whether there should be dramshop liability is a policy decision entirely for the Legislature. Thus, this court has

wrapped itself in a robe of stare decisis. However, one of our decisions is, nevertheless, very conspicuously exposed, namely, *Myers v. Drozda*, 180 Neb. 183, 141 N.W.2d 852 (1966), which was decided a decade before *Holmes* and is still operative precedent. Before *Myers* there was *Muller v. Nebraska Methodist Hospital*, 160 Neb. 279, 70 N.W.2d 86 (1955), in which this court held that immunity of charitable corporations from tort liability, a court-created doctrine, had become an integral part of the law affecting such corporations to the extent that any change in immunity and tort liability should come from the Legislature. With the backdrop of *Muller*, when the question of charitable immunity was presented in *Myers v. Drozda, supra*, this court renounced judge-created charitable immunity from tort liability and stated:

> Defendant hospital relies upon our prior announcement that any change ought to be made by the Legislature. See Muller v. Nebraska Methodist Hospital, supra. If we endorsed legislation by silence, we erred. See, Art. I, § 13, Constitution of Nebraska [citations omitted]. Stare decisis "was intended, not to effect a 'petrifying rigidity,' but to assure the justice that flows from certainty and stability. * * * we would be abdicating 'our own function, in a field peculiarly nonstatutory,' were we to insist on legislation and 'refuse to reconsider an old and unsatisfactory court-made rule.' " Bing v. Thunig, 2 N.Y.2d 656, 143 N.E.2d 3.
>
> "* * * judges of an earlier generation declared the immunity simply because they believed it to be a sound instrument of judicial policy which would further the moral, social and economic welfare of the people of the State. When judges of a later generation firmly reach a contrary conclusion they must be ready to discharge their own judicial responsibilities in conformance with modern concepts and needs." Collopy v. Newark Eye & Ear Infirmary, [27 N.J. 29, 141 A.2d 276 (1958)].

*Myers, supra* at 186-87, 141 N.W.2d at 854.

Responsive to and consistent with Neb. Const. art. I, § 13, which most assuredly is a policy expression by the people of Nebraska, the court in *Myers v. Drozda, supra*, correctly

concluded that whether common-law liability exists is a question for the judiciary, not the Legislature. Moreover, the *Myers* court unequivocally rejected the position taken by the *Holmes* court and the majority of this court—existence of a cause of action recognized at common law must be deferred to the will of the Legislature. As this court observed in *State, ex rel. Sorensen, v. State Bank of Minatare,* 123 Neb. 109, 114, 242 N.W. 278, 280-81 (1932): "[C]ourtesy does not extend to the surrendering of judicial power." Deferral to the Legislature would be a comity of errors.

A precedential principle draws strength from its validity, not just its vintage. Nothing is more detrimental to the development of common law than veneration of inveterate error. If this court continues to clutch previous decisions, without critically examining those decisions, we shall persist in error to the point of perpetuation. As previously noted, an owner who gives his automobile's keys to an intoxicated person may be liable for injury resulting from operation of that automobile by the drunk driver. The act of a tavern owner, in furnishing liquor to a drunk patron who may be expected to drive an automobile, is legally indistinguishable from the act of one who gives his car keys to an incompetent driver. Both acts have as their common consequence the placing of an incompetent driver behind the wheel of an auto, thereby transforming an automobile into a dangerous instrumentality. Is one who sells liquor to an intoxicated person, further disabling the prospective driver, liable to one injured by the drunk driver? Unfortunately, this court has provided no answer to that question but has deferred to the Legislature. From the doors of this court, looking down the Capitol hallway toward the legislative chamber is accomplished only by turning one's back on our courtroom. Perhaps unwittingly, we have today rewritten the Nebraska Constitution: "All courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay, if the Legislature has given the injured person a key to the courtroom."

This court should have answered the question raised in Arant's appeal. In view of Nebraska precedent, namely, *Deck v.*

*Sherlock*, 162 Neb. 86, 75 N.W.2d 99 (1956), and the well-reasoned decisions of other courts, I believe that Arant's petition states a cause of action for common-law negligence which may be prosecuted in the courts of Nebraska.

WHITE, J., joins in this dissent.